(No. 33796.—

UNITED STATES STEEL CORPORATION, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HARRY C. TILLMAN, Defendant in Error.)

*Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

STEVENSON, CONAGHAN, VELDE & HACKBERT, of Chicago, (HARLAN L. HACKBERT, and DOUGLAS F. STEVENSON, of counsel,) for plaintiff in error.

ABRAHAM W. BRUSSELL, of Chicago, for defendant in error.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Harry Tillman filed claim under the Workmen's Compensation Act for an alleged injury suffered in the course

of his employment by United States Steel Corporation. An award for permanent total disability was confirmed by the circuit court of Cook County. Upon petition of the employer we granted a writ of error for further review.

Tillman, a laborer about 60 years old, had been employed for 18 years in petitioner's steel plant. He had been troubled with arthritis for several years. On July 4, 1951, he entered a hospital, where he remained for two weeks of diagnostic treatment under the care of Dr. Stine and Dr. Sherman, the latter a neurologist at the hospital. At the conclusion of a series of tests, including a spinal puncture and bonemarrow studies, the doctors described his condition as "spastic paraplegia—probably due to sub-acute combined degeneration of the spinal cord."

On his release from the hospital Tillman filed a claim for benefits under a company group nonoccupational accident and health insurance policy. The application, dated August 22, 1951, stated that the disability for which benefits were sought "is in no way connected with or due to my employment." It contained the following question: "If disability is due to accident, where and how did it occur?" Tillman inserted no answer to the question. A further question appeared as follows: "Have you or do you intend to present a claim for workmen's compensation arising out of this disability?" Tillman answered "No." The application, signed by Tillman, was returned to his employer; and the insurance company thereafter paid his hospital bill and the sum of $26 per week for 26 weeks.

When these insurance benefits terminated in February, 1952, Tillman applied for and received, under his employer's nonoccupational disability plan, a pension on which he was still receiving payments at the time of the hearing in this case. On March 25, 1952, he filed the present claim for workmen's compensation, on account of the same disability, alleging that on June 27, 1951, he had been injured "while lifting plates of steel." To reverse the judgment

plaintiff in error contends that under the manifest weight of the evidence (1) there was no injury in the course of employment, (2) no notice was given within thirty days, and (3) claim on the employer was not made within six months.

Tillman testified that on June 27, 1951, he was working with a partner chipping steel—that his duties involved turning over the steel plates or "billets," and that in the process of turning one over, the partner's wrench slipped off, "and the blade carried me down, and my back popped on me and hurt me, and then I had to go and sit down." The co-worker referred to was not identified and did not testify. Tillman further testified that he spoke to his foreman about the occurrence, but that he could not remember the foreman's name. He then stated that although he was present at his job every day thereafter until July 4, he merely sat around and did not do any work; that when he returned to the plant in August he told Walter Hyzy, the general foreman, he was hurt and unable to work; that he asked what Hyzy was able to do; and that Hyzy "said I could get what little insurance I had in there and get that out, compensation, whatever you call it."

Drs. Weiner and Rubert were called on behalf of defendant in error. Dr. Weiner, who had examined Tillman for about 45 minutes, gave his opinion of Tillman's condition. He further testified, in answer to a hypothetical question based upon an assumption that no trouble had previously been experienced, that in his opinion an incident such as that related by defendant in error has a causal connection with the subsequent condition. Dr. Rubert, who had also examined Tillman on one office call, confirmed Weiner's findings, and gave a similar answer to a hypothetical question based upon the same assumptions. He also stated that he testified before the Industrial Commission "in about half a dozen cases a month," always for claimants.

The foremen who had supervised Tillman were called as witnesses by plaintiff in error. They testified that Tillman, over a long period of time prior to the date of the alleged accident, had walked with a "wobble" or "shuffle," and that he had complained of being bothered with arthritis. Dr. Leonard Stine, a specialist in internal medicine, had been consulted by Tillman on June 27, 1951, the latter giving him a history of pains in the back and legs experienced during the preceding year and becoming more severe during the preceding month. Dr. Stine recommended hospitalization for further study. In his admission statement to an intern at Michael Reese Hospital on July 4, defendant in error stated he had suffered from stiffness in his legs for two years, and pain in his hip, low back and legs for two months. Dr. Irving Sherman was thereafter called in as a consulting neurologist. Drs. Stine and Sherman, who conducted extensive examinations of Tillman during his two-week confinement in the hospital, testified they found a degenerative disorder of the spinal cord. Dr. Chester Zeiss, chief surgeon at the company's plant, testified that on July 23, 1951, Tillman came into the emergency hospital wishing to return to work; that he stated he had been hospitalized from July 4 for a spinal puncture; and that a general physical examination was made and a pension recommended to the company. No claim of injury was made.

In determining whether findings of the commission have substantial foundation courts must weigh and consider the evidence; and if an award is clearly against the weight of the evidence it is the duty of the court to set it aside, even though there is testimony which, if uncontradicted, would be sufficient to sustain it. (*Corn Products Refining Co.* v. *Industrial Com.* 6 Ill.2d 439.) A claimant under the Workmen's Compensation Act must establish, by a preponderance of the evidence, that an accidental injury was sustained in the course of his employment. A finding

of liability is not justified when the facts and circumstances in evidence preponderate in favor of the opposite conclusion. *Mirific Products Co.* v. *Industrial Com.* 356 Ill. 645.

In the present case the only evidence adduced to show an accident is the testimony of the claimant, entirely uncorroborated by other relevant testimony, that his back "popped" while he was working at his job. He does not identify the "partner," who he says was present. He cannot remember the name of the foreman, whom he purportedly told about the event. He testified that before the date of the "accident" he had no trouble when walking and had no pain in his back when he bent over and lifted anything. Yet the foremen's observations, his statements to them, the history of his condition as related by him to his physician and to the hospital intern, the findings of his own doctors at the hospital, and statements of his counsel in this court, all acknowledge a pre-existing arthritic or other disordered condition. On the date of the alleged accident he consulted a physician, a week later he entered a hospital, a few days after his release from the hospital he sought to resume work and was examined by the company doctor, on August 22 he applied for disability benefits, and in the following February he applied for a pension under his employer's nonoccupational disability plan. On none of these occasions is there evidence that he mentioned any accident or injury sustained at his work. On the contrary, his application for disability benefits affirmatively admits that his condition did not arise from his employment. The answers of Drs. Weiner and Rubert to the hypothetical questions are of little probative value, since they were based on an assumption which the overwhelming weight of the evidence shows is unwarranted here.

We think that under the facts and circumstances shown in this record the award is clearly without basis and that the circuit court committed error in confirming it. (*Corn*

*Products Refining Co.* v. *Industrial Com.* 6 Ill.2d 439.)
We are well aware of the rule, repeatedly urged herein on
behalf of defendant in error, that awards by the Industrial
Commission should not be upset unless without substantial
foundation in the evidence, and that questions of credi-
bility are primarily for its determination. But this rule does
not relieve a court of the duty to set aside an award where
it is clearly against the manifest weight of the evidence.
The mere existence of testimony by an interested party
does not require its acceptance. Assent to the argument of
counsel for defendant in error would require an award to
be confirmed whenever the claimant testified to an injury
no matter how much his testimony may be contradicted by
the record, or how evident it might be that his story is a
fabricated afterthought. It is clear that such is not the
effect of the rule.

Defendant in error points to his own testimony about
just sitting around on the job after June 27, 1951, and
being unable to work; and to testimony by the hospital
intern that Tillman had noticed "something which precipi-
tated his coming into the hospital, which I don't recall,
within a few weeks." It is urged that these statements con-
stitute proof of accidenal injury on that date. We fail to
see that the matters testified to, if true, tend to prove
origin from occupational accident any more than from
natural or degenerative causes.

In explanation of the inconsistent statements on the
application for nonoccupational disability benefits, counsel
relies on Tillman's lack of education, arguing that "insofar
as Tillman was concerned, all he did was to sign the papers."
It might be pointed out, also, that he received the benefits,
to which he would not have otherwise been entitled. Obvi-
ously statements in formal written documents cannot be
tendered at face value for the purpose of obtaining bene-
fits, and then lightly explained away when they stand in

the way of claims for other benefits of an inconsistent nature. See *Corn Products Refining Co.* v. *Industrial Com.* 6 Ill.2d 439.

We conclude that the award is against the manifest weight of the evidence and cannot stand. In view of such conclusion it is unnecessary to discuss other assignments of error. The judgment of the circuit court of Cook County is reversed, and the award by the Industrial Commission is set aside.

*Judgment reversed and award set aside.*