(No. 36411.—

MECHANICS UNIVERSAL JOINT DIVISION, BORG-WARNER CORPORATION, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ALBERT C. GROTHMAN, Plaintiff in Error).

*Opinion filed November 30, 1961.*

Daily, J., dissenting.

Russell J. Goldman and Roald A. Jacobsen, both of Rockford, for plaintiff in error.

Large, Reno, Zahm & Folgate, of Rockford, (Ralph S. Zahm, of counsel,) for defendant in error.

Mr. Justice House delivered the opinion of the court:

Albert C. Grothman, an employee of Mechanics Universal Joint Division of Borg-Warner Corporation, filed an application for adjustment of claim with the Industrial Commission alleging that on December 22, 1958, he accidently injured himself when he stepped on a nail imbedded in the floor where he was working and that this injury resulted in blood poisoning and ultimately in the amputation of his left leg. After a hearing on the disputed issues, an arbitrator found, among other things, that Grothman sustained an accidental injury arising out of and in the course of his employment and awarded him compensation for medical and hospital services, for temporary total disability and for loss of his leg. On review the commission confirmed the decision of the arbitrator but modified the award on stipulation of the parties. The circuit court of Winnebago County set aside the decision and award of the commission on the ground that it was contrary to the manifest weight of the evidence. We have granted a writ of error for a further review of the cause.

The record shows that Grothman suffered a puncture wound in his left great toe. The wound became infected

and the infection could not be controlled because of his diabetic condition. Amputation of the toe did not halt the infection and it was necessary to amputate his left leg six inches below the knee. The principal dispute is whether the commission's finding that the injury to the toe arose out of and in the course of employment is contrary to the manifest weight of the evidence.

Grothman testified that on Monday, December 22, 1958, just before his shift was to quit he walked around the straitening press at which he had been working to get a truck when he stepped on a nail imbedded in the floor; that the point of the nail went through the sole of the shoe, that he felt no pain but could feel the nail; that he sat down, took his shoe off and rubbed his toe; that a fellow worker, Kenny Culvey, came along within a minute and saw him rubbing his foot; that he told Culvey he had stepped on a nail; that the following day his foreman, Charlie Brown, asked if his foot was sore and that he did not work after Thursday of that week. On cross-examination, he stated that the nail went through the side of the shoe and in describing the nail said that it was a sixpenny nail and then said a six-inch nail. He admitted that he did not tell his supervisor about the nail, that he did not report to the first-aid department, that nails are not usually found around the machine, and that he signed a claim for group sickness and accident benefits. The claim form contained the question: "If disability is due to accident: Where?_____ When?_____ Describe_____." These questions were not answered. The claim form also asked "Have you or do you intend to present a claim for Workman's Compensation arising out of this disability?" This question was answered "no." He also admitted that he received group sickness and accident insurance benefits in the amount of $48 per week for 26 weeks. He further testified on cross-examination that he had never before been hurt on the job, but records kept by the first-aid department show

that he was treated on 37 occasions between August of 1953 and September of 1956 for such miscellaneous injuries as cuts on his fingers and chin and slivers in his fingers.

Culvey was called by the petitioner and testified that just before quitting time on December 22, 1958, he saw Grothman sitting on a stool with his shoe off rubbing his foot. This witness did not testify that he saw Grothman step on a nail, or that he saw a nail, or that he was shown a nail.

Dr. O'Malley, called by the petitioner, testified that he was the treating physician of Grothman. He said that when Grothman came to his office on December 23, the patient told him that he stepped on a nail at the plant which went into his toe. The doctor admitted that he filled out and signed the physician's statement on the claim for group accident and sickness benefits. In answer to the question "Is present disability due to patient's occupation?" the doctor wrote "no." He also admitted signing twelve notices of continuation of disability which enabled Grothman to continue to receive insurance benefits.

Grothman's wife testified that her husband was limping on the evening of December 22, 1958, and was limping when he went to work the next morning. She said that her husband's left shoe had a hole in it just above the sole where the great toe would be in the shoe.

Charles D. Brown, petitioner's foreman, was called by the employer. He testified that Grothman told him that he had worked all day with a nail in his shoe and not that he had stepped on a nail imbedded in the floor. Brown said he then told Grothman to report it to the first-aid department. He explained that the employees are to report to the nurse with anything that is wrong.

It is true that questions of fact are primarily within the province of the Industrial Commission. If, however, the award of the commission is contrary to the manifest weight of the evidence it is the duty of the court to set it aside. (*Fisher Body Division, General Motors Corp.* v. *Industrial*

*Com.* 20 Ill.2d 538.) On at least three recent occasions we have set aside awards of the commission as being against the manifest weight of the evidence where the only evidence that the injury arose out of and during the course of employment was the uncorroborated testimony of the claimant which was contrary to prior written statements by him. (*Fisher Body Division, General Motors Corp.* v. *Industrial Com.* 20 Ill.2d 538; *United States Steel Corp.* v. *Industrial Com.* 8 Ill.2d 407; *Corn Products Refining Co.* v. *Industrial Com.* 6 Ill.2d 439.) We are of the opinion that the record in this case reveals a similar situation.

The only direct evidence offered to prove that petitioner stepped on a nail imbedded in the floor was his testimony. This testimony is inconsistent with the statement and omissions in his signed application for accident and sickness insurance. His doctor testified that the petitioner had told him that he stepped on a nail at the plant, but this is inconsistent with the doctor's statement in the application for accident and sickness insurance. While petitioner's wife testified that she saw a hole in his shoe, his fellow worker who saw him within a minute after the alleged accident and who testified in his behalf did not say that he saw a nail, that he was shown a nail or that he saw a hole in the shoe. The petitioner's foreman testified that petitioner told him he worked all day with a nail in his shoe. This statement is, of course, consistent with those of the petitioner and doctor in the application for accident and sickness insurance. As was stated in *United States Steel Corp.* v. *Industrial Com.* 8 Ill.2d 407 at 413-414: "Obviously statements in formal written documents cannot be tendered at face value for the purpose of obtaining benefits, and then lightly explained away when they stand in the way of claims for other benefits."

In an effort to minimize the damage caused by the application for sickness and accident insurance benefits, the petitioner was recalled and testified that he did not remember

signing the application and that he was in a "daze" when he signed it. He said he did not remember anything that happened in January of 1959 and did not even know his wife when she visited him. Doctor O'Malley testified that a person with "high blood sugar" becomes "kind of foggy" and petitioner did not know one day from the other about the time he signed the application in January of 1959. Petitioner's wife testified that her husband did not know her when she visited him in the hospital in January of 1959.

The petitioner admitted on cross-examination that during the period he claims to have remembered nothing he was receiving checks from the insurance company every two weeks and that he endorsed them and gave them to his wife to cash. He was also able to recall in detail the treatment he was given during that period; that there was another bed in the room; that the patient who shared the room when he first arrived on December 28, 1958, had a cold; that this patient's doctor was a Doctor Smith; that when this patient left, the other bed was empty for three days; that a boy with a broken arm then occupied the bed for three days; that a red-headed doctor from Marengo was the boy's physician; that when the boy left, the other bed was vacant for about four days; that a man who had had an appendectomy then occupied the other bed; that the man's doctor was the same Doctor Smith who had treated the first patient in the room; that Doctor O'Malley came to see him at 11 o'clock every morning and they would talk about the condition of his toe; that his wife visited him every morning before she went to work and every Sunday afternoon; and that she would arrive at 8:30 in the morning on the days she worked and could not stay very long because she had to go to work, but on Sundays she would stay from 2 o'clock to 4 o'clock. This testimony, together with the petitioner's testimony on direct examination concerning his treatment in the hospital when he first testified, is inconsistent with his testimony that he did not remember anything that happened

in January of 1959 and did not even know his wife when she visited him.

We conclude that the circuit court of Winnebago County did not err in setting aside the decision and award of the Industrial Commission. The judgment is accordingly affirmed.

*Judgment affirmed.*

Mr. JUSTICE DAILY, dissenting.