(No. 38631.—

JOHNSON & JOHNSON, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(BARBARA SANDERS, Appellee.)

*Opinion filed March 18, 1965.*

SEYFARTH, SHAW, FAIRWEATHER & GERALDSON, of Chicago, (ROBERT H. JOYCE and JOHN J. GILL, of counsel,) for appellant.

HORWITZ AND ANESI, of Chicago, (SIDNEY Z. KARASIK, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is a direct appeal, pursuant to Rule 28—1A, from a judgment of the circuit court of Cook County whereby an order of the Industrial Commission denying workmen's

compensation benefits to Barbara Sanders was reversed, and the award of an arbitrator reinstated. Permanent partial loss of use of the right leg was the chief basis for the award and, as the matter is presented to us, trauma and causal connection are not contested. Rather, the principal issue is whether the Commission's finding that claimant failed to prove she had sustained an accidental injury arising out of and in the course of her employment, was properly set aside by the circuit court as being against the manifest weight of the evidence.

On and immediately prior to September 6, 1961, claimant was employed by Johnson & Johnson company as an operator-trainee of a gauze pad machine and, in connection therewith, was required to insert spools of gauze weighing from 30 to 35 pounds into the machine. Being a trainee, she worked at different times with experienced operators, having worked with Genevieve Kaleciak on August 30, 31 and September 1, 1961, and with Delores Ballard on September 5, 6 and 7. Her employment with Johnson & Johnson had started in June, 1961.

Claimant testified that while working on the night of September 6, she felt a "pull" in her right side and lower right back as she lifted a roll of gauze from a low cart to her machine. A short time later, according to her further testimony, both areas of her body became sore but, after resting 15 to 20 minutes, she returned to work and completed her shift. Appearing as witnesses for the employer, Kaleciak and Ballard each testified that claimant had complained to them about hurting herself while lifting a roll of gauze. However, both witnesses further stated that claimant had fixed the time of injury as being about a week prior to September 6, and that her only complaint had been of pain in the abdomen.

Upon arriving home from work on September 6 claimant took a hot bath and went to bed, but both the side and back continued to bother her. The following night, after

working several hours, the pains became worse and claimant went to the employer's first aid department where she reported that she had injured herself lifting a roll of gauze the night previous. Claimant testified she also reported pain in both her side and her back. However, the nurse in charge, who had made no actual physical examination, testified that claimant had complained only of pain in the lower right abdomen, or quadrant, and a dispensary record introduced into evidence reflected the same thing. Nothing appears to have been done or resolved at the time, but when claimant returned an hour later crying and complaining of intense pain, the nurse sent her to a clinic operated by the company's doctor.

At the clinic claimant was interviewed and examined by Dr. Amado Gueverra, who testified she had reported hurting herself while lifting a roll of gauze at work, that "her complaints were basically abdominal," and that he was "not quite sure if I remember whether she complained of any other part of her body." Based upon his examination of the abdomen and pelvic organs, the doctor's "tentative" or "provisional" diagnosis was a "possible beginning acute appendicitis," and he advised claimant to consult her family physician. When cross-examined, the doctor conceded that trauma occurring when claimant lifted the roll of gauze, might or could have been the precipitating factor of the pain about which she had complained.

After being so dismissed by the employer's doctor, claimant was treated successively by Drs. Reno and Louis Rosi, who examined her side and back and gave her medication. At that time, according to claimant, her side and back were still sore and pain from the back would go down into her right leg and leave it numb. On September 16, 1961, she was examined by Dr. Michael Reiffel, a specialist in industrial medicine, who examined her back and lower extremities and also took X rays of the lumbar spine. Two days later she filed a claim for compensation benefits, one

allegation of which was that she had experienced a "sharp pain to back" while lifting a roll of gauze.

On October 10, 1961, claimant, who was still ailing and had not returned to work, came under the care of Dr. Walter Gingold. The latter caused further X rays of the spine to be taken and then caused claimant to be committed to a hospital for a period from October 19 through October 25. At the time she was still experiencing pain which originated in the lower right lumbar region and radiated along the sciatic nerve into the right leg, and when her legs were placed in traction there was an immediate release of the pain. And while the hospital records state there was "no X-ray evidence of lumbar disc," the clinical findings indicated involvement of the sciatic nerve and the final diagnosis was: "Sciatic neuritis due to probable lumbar disc syndrome." When claimant was again examined by Dr. Reiffel on December 19, 1961, the conditions he found led him to conclude the sciatic nerve involvement was due to a narrowing of one of the lower lumbar discs and, in response to a hypothetical question, he expressed the opinion there was a causal connection between the ill-being of claimant and the lifting of the roll of gauze at work. We do not find that this testimony was in any way contradicted.

On the occasion when claimant was confined in the hospital, she was interviewed at the time of admission by Dr. Raul Blanco, a staff intern, whose written report of the interview represented claimant as saying that she had originally felt pain in her back on September 6 when "she was working in her house." Later, while claimant was still a patient, the doctor amended the report to read that the "pain started as result of lifting heavy object at work— Sept. 6, 1961," and added an explanatory notation that there had been "language difficulty" during the interview. In the latter regard, Dr. Blanco testified before the arbitrator that he had been in this country only about two and one-half months at the time of the interview, that he had

some difficulty with the English language even to the present time, and that it was possible for him to have misinterpreted some of claimant's answers.

The question of whether or not an injury arose out of and in the course of employment is usually one of fact for the Industrial Commission to decide, and its finding in such respect will not ordinarily be disturbed on judicial review, particularly where the evidence on the issue is conflicting or susceptible of different reasonable inferences. (*Huddleston v. Industrial Com.* 27 Ill.2d 446; *ACF Industries, Inc., v. Industrial Com.* 8 Ill.2d 552.) At the same time, however, while it is primarily within the province of the Commission to determine issues of fact, it is nevertheless the function of the court to weigh and consider the evidence in the record when review is sought, and if the decision of the Commission is found to be contrary to the manifest weight of such evidence, it then becomes the duty of the court to set the decision aside. (*Borg-Warner Corp.* v. *Industrial Com.* 23 Ill.2d 441; *Hendren* v. *Industrial Com.* 19 Ill.2d 44; *Corn Products Refining Co.* v. *Industrial Com.* 6 Ill.2d 439.) Upon examining the record here, we are in accord with the judgment of the circuit court that the decision of the commission was against the manifest weight of the evidence.

Based upon its proof tending to show that claimant's original complaints were of pain in the lower abdomen, the employer contends that the preponderance of the evidence is that claimant did not receive a back injury at work, and suggests that the "back injury" was a "fabricated afterthought" which did not materialize until approximately one month after the occurrence. We would hesitate to hold that the situs of pain is to be taken as conclusive proof of the situs of injury, particularly when the lumbar spine and sciatic nerve are involved. However, the employer's arguments overlook three things. First, that the claim for com-

pensation filed twelve days after the accident alleged that claimant had experienced a "sharp pain to back" while lifting a roll of gauze; second, that its own doctor testified the pains about which claimant had complained could have been caused by trauma occurring when claimant lifted the heavy roll; and, third, that it was the uncontradicted medical opinion that the narrowing of the lumbar disc which was the seat of claimant's ill-being could or might have been caused by lifting the roll of gauze. In short, the net effect of the medical testimony was that the only trauma found, *viz.*, the narrowing of the disc, a back injury, could have produced the abdominal pain of which complaint was made. When such evidence is coupled with the claimant's testimony, and laid beside the fact that neither the company nurse nor company doctor made a thorough or complete physical examination, it is our opinion that the preponderance of the evidence satisfactorily established that the lifting did in fact produce the back injury for which compensation was sought.

Equally without merit is the contention that the testimony of Dr. Blanco and of claimant's co-employees creates a contradiction which raises doubt as to whether claimant suffered an industrial injury. As to the co-employees, their testimony verifies that claimant had complained of being injured while lifting gauze into a machine, and differs only with respect to the precise time the injury was received. As to Dr. Blanco, we think it apparent that the inconsistency in his written report stemmed from his unfamiliarity with the English language. (*Cf. Crane Co.* v. *Industrial Com.* 306 Ill. 56, 59.) Particularly is this so since his report, stating that the pain had first occurred while working in the "house" on September 6, was made some six weeks after the occurrence and was completely at odds with claimant's prior and consistent statements to her co-employees, to the nurse, to the other doctors who had seen her, and in her claim for compensation, that she had injured herself at work

while lifting a roll of gauze. Clearly, neither the testimony of Dr. Blanco nor that of the co-employees causes the evidence to preponderate in favor of the opposite conclusion.

Claimant was awarded compensation for a period of 3½ weeks due to temporary total incapacity for work and it is the final contention of the employer that there is no evidence to support the award. We do not agree. Temporary disability exists from the time of the injury until the employee is as far recovered or restored as the permanent character of his injury will permit. (*Shell Oil Co.* v. *Industrial Com.* 2 Ill.2d 590, 599.) Applying this test to the evidence in the record at hand, the award for this item was justified.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*