(No. 39226.—

Roy Cooper, Appellee, *vs.* The Industrial Commission *et al.*—(Parrish-Alford Fence and Machine Company, Appellant.)

*Opinion filed November 19, 1965.*

Stevenson, Conaghan, Hackbert, Rooks and Pitts, of Chicago, (Douglas F. Stevenson and Paul Noland, of counsel,) for appellant.

Kleiman, Cornfield & Feldman, of Chicago, (Bernard Kleiman, Jason Gesmer, and Alton Sharpe, of counsel,) for appellee.

Mr. Justice Underwood delivered the opinion of the court:

This appeal stems from conflicting conclusions reached below on the question of whether the claimant, Roy Cooper, sustained permanent injury in an industrial accident. Contrary to the finding of an arbitrator, the Industrial Commission held that claimant had failed in his burden of proving such injury, and set aside an award. The circuit court of Whiteside County, however, reversed the decision of the

Commission as being against the manifest weight of the evidence and reinstated the award of the arbitrator. The employer, Parrish-Alford Fence and Machine Company, has appealed.

On May 24, 1962, claimant was injured when a metal bar became entangled in a machine he was operating and struck him between the legs in an upward motion. He experienced pain, was taken to a hospital for X rays, was given pain pills, and was off work for 14 days, during which time he saw a doctor every third day. Since returning to the same job claimant has missed no time and has had no further medical treatment. His work requires him to stand at a machine, and he testified that, since the accident, he experiences some pain in his back whether standing or sitting and that his legs hurt after standing for extended periods of time. Claimant also testified he had not injured his back or legs prior to this accident and had experienced no leg pains previously.

Dr. Samuel R. Rubert examined claimant on November 12, 1962, and testified on claimant's behalf that he had found tightness and spasm in the low back area, restriction in the motion of the left leg and hip, and irritability of the lumbosacral musculature. X rays of the spine taken at the time were interpreted as showing a flattening of the lordotic curve and a narrowing of the lumbosacral disc space interval, and it was the doctor's opinion that such structural changes had caused nerve root irritability which was radiating pain into claimant's leg along the sciatic nerve. He diagnosed these as "contusion injury changes" and stated that the condition could have been caused by trauma, and was of the opinion it was permanent. On cross-examination he conceded that the conditions he found could also be caused by infection or disease, that he found no atrophy or impairment of the reflexes or sensation, that the narrowing of the disc space was not "too profound," and that the position of the patient when the pictures were taken could cause the ap-

pearance of the structural changes in the spine he deduced from the X rays. On redirect examination, however, he expressed the opinion that the structural changes were actually present in this instance, since "[t]he film was taken in a neutral position."

The medical witness for the employer was Dr. F. L. Rubright, who had examined claimant on November 10, 1962, and it was his testimony that he found no swelling, no induration, no limitation of motion in the hips, legs or thighs, no limitation of flexion or extension in the spine, and no objective evidence of any underlying pathology. He admitted he took no X rays, and when shown those taken by Dr. Rubert he testified that "the portion of the 5th lumbar on the 1st sacral vertebra" was "not in the normal position;" that the margin of the sacral vertebra appeared to impinge "on the margin of the 5th lumbar so that it narrows the space" between them. When asked if the pictures showed a flattening of the lordotic curve, the witness responded: "There may be some. It may be due to the position," and added that such flattening is oftentimes normal. He did not testify regarding the effect of the pathology indicated by the X rays nor as to the permanence of any disability which might thereby be caused.

It was stipulated that the only issues in this case concerned the nature and extent of the injury.

The sole question for our consideration is whether the finding of the Commission that claimant's proof failed to establish any permanent disability, and its action in setting aside the arbitrator's award given for a 5% permanent loss of use of the left leg, are against the manifest weight of the evidence. If not, such action will not be disturbed on judicial review where the evidence is conflicting or susceptible of different reasonable inferences. *Johnson & Johnson* v. *Industrial Com.* 32 Ill.2d 316.

We agree that the circuit court properly vacated the Industrial Commission's order as to permanent injury and re-

instated the award of the arbitrator. It does not appear to us that any real conflict exists; claimant's physician testified as to his pathological findings and positively stated his opinion that such abnormalities as were revealed by the X rays were actually present and not due to the positioning of claimant's body under the X-ray equipment. His diagnosis was that there were "contusion injury changes" of, in his opinion, a permanent nature. The employer's medical witness, who had made no X-ray examination, first testified that his examination revealed no objective evidence of underlying pathology. However, when shown claimant's X rays he substantially agreed with Dr. Rubert as to the pathological indications thereon, qualifying his agreement only by indicating portions thereof could be due to positioning of the body. He did not testify as to the effect of such pathology upon the patient nor as to the permanency of any difficulties attributable thereto, thus leaving Dr. Rubert's testimony thereon virtually unchallenged. Considering that Dr. Rubert performed the X-ray examination and positively testified that claimant's body was neutrally positioned when the films were taken, the speculation by Dr. Rubright that the lordotic curve pathology might be due to positioning can scarcely be said to create a conflict. Nor does his testimony that such curve pathology is oftentimes seen in normal conditions raise any substantial question, since he agreed the lumbosacral pathology was also present and did not indicate any possibility it was positional or occurred in a normal condition.

In our judgment there existed no substantial conflict in the medical testimony, and the finding of the Commission that claimant's proof was insufficient to establish permanent disability was rather clearly against the manifest weight of the evidence.

The circuit court of Whiteside County properly vacated the Commission's action and reinstated the arbitrator's award. Its judgment is affirmed. *Judgment affirmed.*