37 Ill.2d 62 (1967)
224 N.E.2d 830
ROCKFORD CLUTCH DIVISION, BORG-WARNER CORPORATION, Appellant,
v.
THE INDUSTRIAL COMMISSION et al.  (VELVON E. HUNT, Appellee.)
No. 39942.
Supreme Court of Illinois.
Opinion filed March 29, 1967.
*63 RENO, ZAHM, FOLGATE & SKOLROOD, of Rockford, (RALPH S. ZAHM, of counsel,) for appellant.
GERALD F. TUITE, of Rockford, (GERALD A. FACCHINI, of counsel,) for appellee.
Judgment reversed; award set aside.
Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:
The claimant, Velvon E. Hunt, filed a petition with the Industrial Commission to recover specific loss benefits for injuries sustained to his legs while employed as a milling machine operator by the Rockford Clutch Division, Borg-Warner Corporation. The arbitrator found that Hunt did not sustain an accidental injury in the course of his employment on September 7, 1963, and denied the award. On review, the Industrial Commission set aside the decision of the arbitrator and found that Hunt had suffered an accidental injury while on the job, on that date, resulting in permanent and partial loss of use of both of his legs to the extent of 10% and accordingly ordered compensation to be paid. This award by the commission was confirmed by the circuit court of Winnebago County.
The employer appealed to this court contending that the arbitrator erred in admitting into evidence a certain statement made by Hunt to a fellow employee on the day of the alleged accident and that the decision of the Industrial Commission is contrary to the manifest weight of the evidence.
On Saturday, September 7, 1963, Hunt was engaged in *64 operating a milling machine. About 9:30 A.M. he blew some cast iron dust into his left eye. He went to the employer's first-aid department where the company nurse examined his eye but could find nothing in it. Returning to his machine, he passed the desk of his foreman, William Farnand, and told him of the incident stating that he would like to see a doctor. Hunt then went back to his machine and continued to operate it while his foreman arranged with the nurse for Hunt to see the company doctor. The foreman returned to Hunt and told him that he had arranged for an appointment and soon thereafter Hunt returned to the nurse's office and obtained a permit to leave for his doctor's appointment which was scheduled for 11:30 A.M. At that time he went to the doctor who removed the offending dust from his eye and Hunt went to his home.
On Monday, September 9, Hunt telephoned the company personnel department and reported that he was unable to work and was going to see his family physician, Dr. Kenneth Skaar. On that same day Hunt also went to the company premises and spoke with his foreman, telling him that he was not absent because of his eye injury, but because he just didn't feel well. He also mentioned to the foreman that he was going to see his doctor. The following day, Tuesday, September 10, Hunt saw Dr. Skaar and compained of pains in his back and legs. The doctor then had Hunt admitted to the hospital for two days for X rays and tests. On Thursday, September 12, Hunt was released from the hospital and returned home where he took prescribed medication for approximately one week. At the end of this period, he returned to Dr. Skaar, who referred him to an orthopedic specialist, Dr. Dee. Hunt went to see Dr. Dee for the first time on October 3, 1963, and at that time was sent to the hospital for more X rays. Dr. Dee then prescribed a back brace and physiotherapy which eventually consisted of 18 electric shock treatments to the back. Hunt did not return to work until November 4, 1963.
*65 On September 17, 1963, Hunt appeared at the employer's personnel office and signed an application for group insurance medical expense benefits. On September 24, 1963, he again appeared at the company's personnel office and signed a claim form for nonoccupational group accident and health benefits. In reply to a question on the form as to whether the disability complained of was due to an accident, Hunt answered, "No."
Pursuant to his request for nonoccupational group accident insurance benefits Hunt was paid for all hospital and physicians' expenses incurred by him in being treated for his back ailment and also received group insurance payments of $53 per week while he was not working.
During the last week of September, 1963, according to Hunt's testimony, he visited the personnel office of the company and told Howard Lundberg, the personnel director, of having felt pain in his back when he picked up a casting at work on September 7, 1963. Hunt further testified at this time he inquired about having the company pay his medical expenses under the Workmen's Compensation Act. Lundberg testified that this discussion regarding workmen's compensation did not take place until October 9, at which time no action was taken. In any event, it is clear that no notice was given to the company of claimant's alleged back injury until some three or four weeks after the accident allegedly occurred.
On October 15, 1963, Hunt again returned to the personnel office and spoke with Jack Mincemoyer, who was in charge of the employer's industrial relations, and informed him that he expected the company to treat his case as a workmen's compensation case. Mincemoyer pointed out that there had been no report of any back injuries on September 7, 1963. Hunt thereupon went into the nurse's office where he made out a report informing the company that he had not only gotten a foreign particle in his eye on the morning of September 7, but also, earlier that same morning, *66 had felt a sharp pain in his back and lower abdomen while lifting a casting. At the time he was filling out this form Hunt requested the secretary in the office to revise his previously signed group insurance claim form by erasing the word "no" in response to the question, "If disability is due to accident: Where?" On November 30, 1963, Hunt's application for adjustment for claim was filed with the Industrial Commission seeking recovery for permanent partial loss of the use of his legs.
At the outset we shall consider the employer's contention that the arbitrator erred in allowing Louis Robbins, a co-worker of Hunt, to testify as to a certain statement allegedly made by Hunt on the morning of September 7, 1963. At the hearing Robbins testified that he was working in the same area as Hunt on the morning in question when he observed Hunt standing at the end of his machine with his hands in the small of his back. When Robbins walked over to Hunt, the latter told him that, "I just pulled hell out of my back." Although this statement was objected to by counsel for the employer on the ground that it was hearsay, it was nevertheless admitted into evidence by the arbitrator on the basis of its being part of the res gestae.
We agree with the ruling of the arbitrator on this point. The so-called res gestae rule as we have noted in People v. Poland, 22 Ill.2d 175, has come to have myriad descriptions and applications. In Poland, the court indicated a preference for the use of such descriptive characterizations as "spontaneous declarations" and "excited utterances", referring to the remarks generally classified under the heading "res gestae". As these characterizations infer, they apply to remarks made spontaneously and concurrently with an affray, an injury, a collision, or the like, and are admissible as exceptions to the hearsay rule on the ground that they carry with them a high degree of credibility because of their spontaneous nature. We believe that under the circumstances under which it was made, Hunt's remark regarding *67 his back was an excited utterance and as such, was properly admitted into evidence by the arbitrator.
We now turn to the employer's contention that the decision of the Industrial Commission was against the manifest weight of the evidence. We are well aware of the rule, strongly urged by counsel for the claimant, that questions of fact, credibility and weight of testimony are primarily for the determination of the Industrial Commission. We are equally aware that it is within the province of the Industrial Commission to draw reasonable inferences and conclusions from the evidence. If, however, the award of the commission is contrary to the manifest weight of the evidence, it is the duty of the reviewing court to set it aside. (Johnson & Johnson v. Industrial Com. 32 Ill.2d 316; Mechanics Universal Joint Div., Borg-Warner Corp. v. Industrial Com. 23 Ill.2d 441; Corn Products Refining Co. v. Industrial Com. 6 Ill.2d 439.) We note that the only additional evidence presented to the Industrial Commission on review was a photostatic copy of a first-aid daily record made at the employer's office.
In examining the facts presented by the parties it is clear that the only direct evidence offered to prove that the claimant Hunt injured his back while picking up a casting, aside from the remark made to his co-employee, was his own testimony. Although this alleged accident took place on the morning of September 7, he did not inform his employer until some three or four weeks later. It was not until October 15 that he decided to fill out a form used by his employer for industrial claims. The accident allegedly occurred before his eye injury, but yet he made no complaint to the company nurse, the company doctor, or his foreman, all of whom he saw on the same day after the alleged accident. Along with these facts, we note that the claimant answered "no" to the question as to whether the injury resulted from an accident appearing on the claim for non-occupational group and health insurance benefits. This behavior *68 of the claimant is inconsistent with his testimony that he had injured his back on September 7.
We have considered the claimant's assertion that he was not qualified to answer the question regarding the cause of his injury since he, as a layman, did not understand the use of the term "accident" as used within the law. We find no deviousness in the use of the term "accident" as contained in the form, which was an application for nonoccupational benefits and, as we stated in United States Steel Corp. v. Industrial Com. 8 Ill.2d 407 at 413, 414: "Obviously statements in formal written documents cannot be tendered at face value for the purpose of obtaining benefits, and then lightly explained away when they stand in the way of claims for other benefits * * *." That claimant was aware of the effect of his having answered "no" to the question was demonstrated by his subsequent request to an office girl to change the answer.
The facts in this case are similar to several recent cases involving inconsistent behavior where we set aside awards, notably, Mechanics Universal Joint Div., Borg-Warner Corp. v. Industrial Com. 23 Ill.2d 441; Fisher Body Div., General Motors Corp. v. Industrial Com. 20 Ill.2d 538; United States Steel Corp. v. Industrial Com. 8 Ill.2d 407.
Because Hunt's claim is based primarily upon evidence offered through his own testimony, and because that testimony is inconsistent with his actual behavior, we conclude that the decision of the Industrial Commission is against the manifest weight of the evidence and consequently that decision should not have been confirmed by the circuit court. Accordingly, the decision of the circuit court is reversed and the award set aside.
Judgment reversed; award set aside.