76

(No. 52697.–

REPUBLIC STEEL CORPORATION, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Mico Knezevich, Appellant).

*Opinion filed September 29, 1980.*

WARD, J., took no part.

Thomas G. Cronin, of Chicago (Carolyn C. Whittington, of counsel), for appellants.

Keck, Mahin & Cate, of Chicago (Henry C. Szesny, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In proceedings under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) an arbitrator for the Industrial Commission found that claimant, Mico Knezevich, failed to prove that he sustained accidental injuries arising out of and in the course of his employment with respondent, Republic Steel Corporation, and denied the claim for compensation. On review, the Commission set aside the decision of the arbitrator and awarded claimant compensation of $184.52 per week for life for complete permanent disability. On *certiorari,*

the circuit court of Cook County set aside the decision of the Commission and reinstated the decision of the arbitrator. Claimant appealed to this court pursuant to Rule 302(a) (73 Ill. 2d R. 302(a)). Claimant argues in this court that the decision of the Industrial Commission is not against the manifest weight of the evidence. Respondent contends that the manifest weight of the evidence supports the judgment of the circuit court that claimant failed to prove that he sustained an accidental injury which arose out of his employment. Respondent argues, characterizing the alleged injury as mysterious, that the evidence demonstrates that claimant's accidental injury did not occur. Respondent does not dispute the fact that claimant is permanently and totally disabled.

Claimant, age 58, was called as the first witness in the proceedings before the arbitrator. He testified that on July 7, 1976, he was employed by respondent as an oiler. As an oiler, he was responsible for lubricating the machinery at respondent's plant. His duties included transporting large drums of oil to various locations in the plant. This task was accomplished with the assistance of a crane operator. Claimant would direct the crane operator with hand signals and assist in securing the drum in its proper location when lowered. Claimant stated that on July 7, 1976, at approximately 6 a.m. he was transporting a 55-gallon drum of oil with the assistance of a crane operator. He stated that on this occasion, in order to prevent the drum from being lowered on top of him, it became necessary for him to shove the drum a distance of approximately 20 inches. Claimant testified that he immediately noticed pain in his back and dropped to the floor, where he remained for five minutes. When he recovered from this pain, he stated that he informed Virgil, his foreman, of the circumstances of his injury. Claimant then slowly changed clothes, drove home, and rested in bed. That evening he called the shift fore-

man, Mr. Nowak, and informed him that he was unable to work. Claimant worked the 11 p.m. to 7 a.m. shift at the time of the alleged injury. Claimant testified that he had attempted to contact his family physician but was unable to reach him because it was Wednesday.

On July 8, 1976, the following day, claimant saw his family physician, Dr. Hugo B. Cordova. Dr. Cordova examined claimant and recommended immediate hospitalization for treatment of his back. Claimant was then admitted to South Chicago Community Hospital, where he remained for one month. Claimant's condition was diagnosed as a ruptured intervertebral disc at L4-L5. Dr. Milton Tinsley and Dr. Cordova performed a lumbar laminectomy, a surgical procedure in which they removed the ruptured disc. Claimant stated that he continued to experience constant pain in his back, his right leg, and the right side of his body generally. Claimant did not return to work.

Claimant also testified concerning his prior medical history. He stated that he had sustained three prior injuries in the course of his employment with respondent. In 1963, he sustained a fractured left leg when his leg was hit with a piece of steel. In 1973, he sustained a concussion and loss of hearing when a load of steel suspended by a crane hit his head. In 1975, he sustained a hernia while lifting a heavy object. This condition required two operations, and claimant stated that he continued to experience discomfort. Claimant did not receive compensation for these injuries. In addition, he stated that he had suffered from ulcers for the past 18 years and that in 1975 he had a cervical laminectomy.

On cross-examination, claimant again stated that he had informed Virgil, his foreman, of the circumstances of his injury, adding that, to his knowledge, Virgil did not witness the incident. Claimant stated that he had not reported to respondent's medical department immedi-

ately following the alleged accident. He offered the fact that he had lost confidence in respondent's physicians as his reason for not seeking treatment at the plant. Claimant stated that he did not inform Dr. Cordova of the accidental nature of his injury when he initially sought treatment for his condition. He did state, however, that at some point during his hospitalization he informed Dr. Cordova that he was injured at work. Claimant described this conversation as follows: "I tell him one time, 'doctor, I'm hurt on job,' and him say, 'I don't want to listen to that, I don't want it. I help you as much as I can.' " In response to the question of whether he had informed Dr. Tinsley of the circumstances of his injury, claimant stated: "No. I wanted to find out what him say." Claimant also stated that he did not experience problems with his lower back prior to July 7, 1976, nor had he lost any time from work prior to the accident due to lower back pain. In addition, claimant stated that he had applied for disability pension benefits both prior to and subsequent to his alleged accidental injury on July 7, 1976. He believed that the person to whom he spoke concerning these benefits was Edna DiPasquo. He stated that he informed her that he was hurt on the job.

Claimant called as his next witness, Dr. Robert C. Busch, a practicing surgeon and instructor in surgery at the Chicago Medical School. Dr. Busch had examined claimant on April 18, 1977, and detailed his findings concerning claimant's medical condition. He noted operative scarring of the low back area and diagnosed claimant's condition as a herniated disc syndrome of the lumbar area and bilateral lumbosacral sprain with sciatic radiation of spasm into the right hip and down the posterior aspect of the right thigh. In addition, Dr. Busch noted myositis of the upper, mid, and lower thoracic paravertebral musculature. In summary, he found that claimant's condition was permanent and that his disabled condition prevented

him from engaging in gainful employment. In response to a hypothetical question which included the alleged circumstances of claimant's injury at work and a detailed description of his prior medical condition, Dr. Busch testified that the accident at work and claimant's present condition of disability were causally connected.

On cross-examination, Dr. Busch stated that it is an established practice for physicians to take a history from the patient in the course of treating injuries to the lumbar spine. He stated that this practice included inquiring whether the condition was related to a recent event which might have involved trauma. In addition, Dr. Busch stated that if the hypothetical question were modified to include treatment for low back and lumbar strain symptoms in May and August 1975, his conclusion that the accident and the condition were causally related would remain the same. Dr. Busch also stated that he would not consider it unusual for the records of a treating physician to fail to include references to an alleged trauma in the patient's history. He stated that people in pain may not emphasize particular aspects of their condition in the diagnostic interview.

Respondent called as its first witness Edna DiPasquo. Mrs. DiPasquo stated that she was employed by respondent as a pension clerk and that her duties included processing applications for retirement. She stated that she had met with claimant in October 1976, April 1977, and July 1977 to discuss his applications for retirement. On all three occasions Juanita Negreti was present and acted as an interpreter. All of these interviews were conducted in Spanish. The record reveals that claimant's native language is Serbo-Croatian. His ability to communicate in Spanish, his second language, is superior to his knowledge of the English language. On these three occasions claimant informed Mrs. DiPasquo that he did not feel well, that he was unable to continue working, and that he desired to

retire. Mrs. DiPasquo also stated that if an individual informed her that he suffered from a work-related injury she would refer them to Robert Bernardi. She stated that she did not refer claimant to Bernardi.

Respondent called as its next witness Robert Bernardi. Bernardi testified that he was employed by respondent as a supervisor of compensation. He stated that as a supervisor of compensation he has custody of records obtained in the course of workmen's compensation investigations. One such record in his possession was an insurance benefit application filed by claimant subsequent to his alleged accident. Bernardi explained the procedure for completing this form. He stated that part A of the form would be completed by the person claiming benefits under the policy. This form would then be taken to the treating physician for completion of part B. Once these steps were taken, the form would be submitted to the insurance office of the respondent to complete the application for insurance benefits. He stated that it is customary for this form to be sent to the company by the treating physician. Dr. Cordova indicated in part B of the form submitted on behalf of claimant that the injury for which benefits were claimed did not arise out of the employment. Part A of the form, the section to be completed by claimant, contained a series of questions to be answered if the injury for which benefits were claimed was accidental. These questions requested information concerning the date of the accident, whether or not the accident happened at work, and a brief description of the accident. This portion of part A was left unanswered in the section of the form completed and signed by claimant. Part C of this form was to be completed by respondent. This section asked the question of whether or not the disability was sustained in the course of employment. This question was left unanswered by respondent. In addition, Bernardi had in his possession what he described as a medical record card.

The card was admitted into evidence. He stated that this was a record of injuries or illnesses that do not pertain to work. This record indicated that claimant had lost time from his employment in March 1973 for arthritis of the lumbosacral spine. The record did not indicate lost time as a result of the alleged accidental injury in July of 1976. On cross-examination, Bernardi stated that lost time as a result of a work-related injury would not appear on the form. On redirect examination, Bernardi stated that he had searched the records of respondent and found no reference to an accident in July 1976.

Respondent called as its last witness Dr. Ben Camacho, a practicing physician specializing in industrial medicine and surgery. Dr. Camacho stated that he examined claimant on April 18, 1977. He described the procedures employed and detailed the observations that he made concerning claimant's condition. He stated that he believed that claimant could be gainfully employed. He also stated that it was a common practice to question a patient concerning recent trauma and to include this information in the written history. On cross-examination, Dr. Camacho stated that he would not recommend that claimant be employed in a position that required heavy lifting or pushing. He also stated that if a patient spoke very little English it would be advisable to conduct the history with the assistance of an interpreter.

In addition, respondent introduced the medical records of Dr. Cordova, Dr. Tinsley, and Dr. Dobril. Dr. Cordova's and Dr. Tinsley's records did not indicate that claimant's condition was related to an injury sustained at work. These records did not, however, indicate that claimant's condition was not work related. Dr. Dobril's records indicated that claimant had sought treatment for a condition diagnosed as acute myositis of the low back on July 31, 1973, and that this treatment continued periodically through November 1975. "Myositis" is defined as an

inflamation of muscle, especially striated or striped muscle. Schmidt's Attorney's Dictionary of Medicine, at M-145 (1980).

In the proceedings before the Commission, claimant informed respondent that he intended to present additional evidence related to the issue of notice of the accidental injury. The nature of this evidence was a conversation between claimant and his foreman. Respondent had not been given notice of the nature of this testimony and requested a continuance to allow respondent to investigate and rebut this testimony. The continuance was granted. In the proceedings on review, claimant was the only witness to testify. He stated that he had not returned to work, that he continued treatment with his physicians, and that he continued to experience pain in his back and legs. In addition, he stated that he had a conversation with Virgil, his foreman, on May 24, 1978, at Munster Lumber Company. The conversation was as follows: "I said, 'Virgil, what happened, why you no help me?' He say, 'Mike, I can't help you. I know you tell me this morning that you got hurt. Why you no wait for the company doctor?' " Claimant stated that the company physician did not arrive until 10 a.m. On appeal, claimant's counsel argued this point, and it remained unrebutted. On cross-examination, claimant stated that he was not socially acquainted with Virgil and that this was the only occasion on which he had spoken to him since the alleged accident. Claimant's foreman was not called as a witness to testify in any of the proceedings.

Respondent argues, relying principally upon the line of cases wherein this court has rejected testimony of a claimant which is obviously false, that the decision of the Industrial Commission is against the manifest weight of the evidence. (See *Caterpillar Tractor Co. v. Industrial Com.* (1978), 73 Ill. 2d 311; *Deere & Co. v. Industrial Com.* (1970), 47 Ill. 2d 144; *Rockford Clutch Division,*

*Borg-Warner Corp. v. Industrial Com.* (1967), 37 Ill. 2d 62; *Mechanics Universal Joint Division, Borg-Warner Corp. v. Industrial Com.* (1961), 23 Ill. 2d 441; *Fisher Body Division, General Motors Corp. v. Industrial Com.* (1960), 20 Ill. 2d 538; *United States Steel Corp. v. Industrial Com.* (1956), 8 Ill. 2d 407; *Corn Products Refining Co. v. Industrial Com.* (1955), 6 Ill. 2d 439.) Respondent contends that there was no evidence introduced in the proceedings below which corroborates claimant's alleged accidental injury and suggests that the manifest weight of the evidence contradicts and is inconsistent with claimant's testimony. In support of this position, respondent relies primarily upon three arguments. First, respondent contends that no accidental injury was reported immediately following the alleged occurrence. Second, respondent contends that no report of the alleged accidental injury was made to claimant's treating physicians and that claimant's testimony was contradicted by Dr. Cordova's statement in the application for insurance benefits that claimant's condition was not employment related. Third, respondent asserts that the Commission did not have the opportunity to observe claimant and issues of credibility therefore should be resolved in favor of the arbitrator.

We agree with respondent that the burden is upon the party seeking an award to prove by a preponderance of credible evidence the elements of his claim, particularly the prerequisite that the injury complained of arose out of and in the course of his employment (*United Airlines, Inc. v. Industrial Com.* (1980), 81 Ill. 2d 85, 96). It is also true that the testimony of a claimant standing alone may support an award. An award is not justified, however, if all of the facts and circumstances preponderate in favor of the opposite conclusion. (*Deere & Co. v. Industrial Com.* (1970), 47 Ill. 2d 144, 149.) It is primarily the function of the Commission to judge the credibility of witnesses and to draw reasonable inferences from the

testimony. If the Commission's decision is against the manifest weight of the evidence, it must be set aside. *United States Steel Corp. v. Industrial Com.* (1956), 8 Ill. 2d 407, 411.

We find nothing in the record of this case to remove it from the general rule that it is the primary responsibility of the Industrial Commission to determine disputed questions of fact and to draw reasonable inferences from the evidence. Claimant's testimony was contradicted by the statement of Dr. Cordova, in the application for insurance benefits, that the injury was not employment related, but that statement raised only questions of fact and credibility for the Commission's resolution. (See *Calendar Packing Co. v. Industrial Com.* (1967), 38 Ill. 2d 506.) Claimant's testimony, if believed, is evidence of an attempt to inform his physician of the cause of the accident. In addition, claimant's testimony that he notified his supervisor of the circumstances of his injury was uncontradicted.

Nor can it be argued that claimant's failure to answer the questions related to whether the injury was accidental in his application for insurance benefits renders his testimony unbelievable. As was the case in *Republic Steel Corp. v. Industrial Com.,* in which an award was confirmed, this record neither admits nor denies an accident. (*Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 40-42; see also *United States Steel Corp. v. Industrial Com.* (1964), 32 Ill. 2d 68, 73.) While it is true that claimant's testimony concerning his prior problems with his lower back was impeached by the records introduced by respondent, the evaluation of this evidence and the conclusions to be drawn are within the province of the Commission. *Spiegel, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 226.

Respondent's contention that the Commission did not have the opportunity to observe claimant and assess his

credibility is also without merit. The record reveals that claimant testified on review before the Industrial Commission. Questions of fact are within the province of the Industrial Commission even where the Commission's findings differ from those of the arbitrator and no further evidence has been taken by the Commission. *Forrest v. Industrial Com.* (1979), 77 Ill. 2d 86, 92-93.

In summary, we do not believe, after consideration of the record, that the decision of the Commission was against the manifest weight of the evidence. For the reasons stated, we reverse the judgment of the circuit court and confirm the decision of the Industrial Commission.

*Judgment reversed;*
*award reinstated.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.