(No. 43200.—)

MARY T. ANDRONACO *et al.*, Appellees, v. THE INDUSTRIAL COMMISSION *et al.*—(The City of Chicago, Appellant.)

*Opinion filed January 28, 1972.*

RICHARD L. CURRY, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and MARSILE J. HUGHES, Assistant Corporation Counsel, of counsel,) for appellant.

KENNETH S. LEWIS, of Chicago, (SIDNEY Z. KARASKI, of counsel,) for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal by the employer, City of Chicago, under the Workmen's Compensation Act, from a judgment entered by the circuit court of Cook County, which reversed the decision of the Industrial Commission and reinstated the award of the arbitrator.

Mary T. Andronaco filed a claim for compensation for herself and her two minor children, for the death of her husband, John D. Andronaco, from a heart attack alleged to have arisen out of and in the course of his employment as a garbage collector for the City of Chicago.

The arbitrator found in favor of the widow and the minor children and entered an award of $15,000, plus $500 for funeral expenses, and $200 payable to the State Treasurer as *ex-officio* custodian of the section 7(f) Special Fund. (Ill.Rev.Stat. 1961, ch. 48, par. 138.7(f).) The City applied to the Commission for a review of the award. However, it offered no additional evidence before the Commission. The petitioner offered the additional testimony of Mary T. Andronaco, the widow, and Rita Smith, daughter of the decedent. After this further evidence was received, the Commission set aside the arbitrator's award and found that Andronaco did not sustain accidental injuries arising out of and in the course of his employment.

The widow and minor children sought review by writ of *certiorari* in the circuit court, which reversed the decision of the Commission and reinstated the award of the arbitrator. This appeal followed.

During the hearing before the arbitrator, evidence was introduced that the decedent was one of a crew of three laborers on a City of Chicago garbage truck. The crew worked 8 hours per day for 5 or 6 days per week. The decedent was known as the "center man" of a three-man crew. The right and left man would roll the garbage cans from their respective sides to the back of the truck. It was

the duty of the "center man" to lift up the cans and empty their contents into the truck. If the cans were heavy, the side men would help the center man empty them.

On May 11, 1962, the last day which Andronaco worked, the side men collected, and Andronaco handled, two truck loads of garbage which weighed from 20,000 to 24,000 pounds. Most of the garbage cans which he handled were of 50-gallon capacity, 4 to 5 feet in height, of steel construction, and when empty weighed 35 to 50 pounds. A heavy can weighed as much as 300 pounds, and required all three men to lift it. In addition to handling every can that was emptied, Andronaco also shoveled refuse. For 18 years, he had worked, as a laborer, collecting garbage for the City.

A fellow worker testified that Andronaco "sweated a lot," and was "a little pooped" the last day he worked. His widow testified that when he came home after work he was sweating more than was usual; that he appeared pale and "dragged out"; that he shivered and complained of being cold, and even though the temperature in the kitchen was 75 degrees, he put on a sweat shirt; that she gave him whiskey and coffee, but it did not warm him; that even though his appetite was generally good, he ate very little that evening; that after supper, he lay down to rest; that he felt cold and continued to sweat, and when he arose later and returned to the kitchen, he was holding and rubbing his chest; and that he died at about 3:00 A.M. the following morning.

Rita Smith, his daughter, testified that she saw her father when he returned from work and came into the kitchen about 5:00 P.M.; that he was pale and was sweating; that he didn't eat much supper and lay down in the sun room; that about 7:00 P.M. he came back into the kitchen and sat down; that he was holding and rubbing his chest, was pale and was breathing heavily; that this was the

last time she saw him alive; and that she had seen him return home from work on other occasions but had never noticed this paleness or sweating before.

The medical evidence on behalf of the petitioners and the city was conflicting. In response to a hypothetical question, the petitioner's doctor testified that in his opinion based upon a reasonable degree of medical certainty, the hypothetical man succumbed to a heart attack and that the rather heavy work which he was doing might or could have contributed to the attack. The city's physician stated that in his opinion, there was no causal relation between the hypothetical man's last day of work and his death, and that he had died as a result of "shock."

The arbitrator found that Andronaco's death resulted from a heart attack which was compensable under the Workmen's Compensation Act, and made an award on that basis. It is the contention of the City that his death did not arise out of his employment; that the circuit court's order reversing the decision of the Industrial Commission was invalid because it did not find that the Commission's decision was against the manifest weight of the evidence; and that the petitioners did not notify the City of any accidental injury to Andronaco as required under the Act.

The City's first contention that the heart attack did not arise out of or in the course of Andronaco's employment is not well taken. Although it is true that he did not collapse during his actual employment, a legitimate inference can be drawn from the evidence that he died from an injury which arose out of the employment. In *Clifford-Jacobs Forging Co. v. Industrial Com., 19 Ill.2d 236,* at pages 244 and 245, wherein we affirmed a death award to the employee's widow, we stated: "If a workman's existing physical structure gives way under the stress of his labor, his death is an accident which arises out of his employment. [Citation.] The applicant must prove that the death arose from the employment but he need not negative every possibility that death might have arisen

other than out of the employment, where a legitimate inference from the evidence is that he died from an injury which arose out of the employment." There is evidence in the record of abnormal sweating while the decedent was performing his usual duties on his last day of work, and the petitioners' medical expert testified that the heavy work which the decedent did could have contributed to the heart attack of which he died.

In *Gould National Batteries, Inc. v. Industrial Com., 34 Ill.2d 151,* we affirmed an award where the decedent collapsed in his home after normal working hours. In *Gould,* the medical evidence was conflicting, as it was here, and at page 157 we stated: "We believe the testimony, referred to at some length earlier in this opinion, clearly supports a reasonable inference that the deterioration of decedent's existing physical structure manifested itself during his employment on July 25 even though its ultimate conclusion did not occur until late that night after decedent had gone to bed. This is sufficient, if credible, to comply with the requirement of establishing an accidental injury."

The City next contends that the judgment of the circuit court was erroneous in that it failed to include a finding that the decision of the Commission was against the manifest weight of the evidence. We do not believe that the failure of the circuit court to incorporate the wording complained of, renders the judgment void. Such defect can be cured by this court. With respect to the power of the court to reverse the Commission and reinstate the arbitrator's award, a similar problem was presented in *Hendren v. Industrial Com., 19 Ill.2d 44,* and at page 49 we stated: "Defendant argues further that the circuit court erred in awarding compensation in the amount designated by the arbitrator. *** While the arbitrator's findings are not binding upon the Industrial Commission, which has original jurisdiction of cases brought before it on review [citation], nevertheless, the

arbitrator's decision is not without legal effect. It has been held to provide the basis for the entry of a judgment by the circuit court [citation], and to be *res judicata* of the rights of the parties. [Citations.] Hence, the arbitrator's findings and award may be relied upon and sustained by the circuit court when it finds that the decision of the Industrial Commission was against the manifest weight of the evidence."

We find that the Industrial Commission's decision was against the manifest weight of the evidence, and that the evidence and the reasonable inferences drawn therefrom clearly established a causal connection between Andronaco's death from a heart attack and his employment. Also see: *O'Brien v. Industrial Com., 48 Ill.2d 304;* and *Lewandowski v. Industrial Com., 44 Ill.2d 204.*

The city's final argument is that the petitioners failed to serve sufficient notice on the City of an accidental injury which arose out of the decedent's employment and caused his death. The Workmen's Compensation Act (Ill.Rev.Stat. 1961, ch. 48 par. 138.6(c)) provides that no proceedings for compensation shall be maintained unless oral or written notice of the accident is given to the employer not later than 45 days after the accident, and that "No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings of arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy."

On the day of Andronaco's death, his widow made a telephone call to the City, asked for one of the foremen under whom her husband worked, and in his absence talked with another man. She told him that her husband had come home the day before and was sick and that he passed away during the night from a heart attack. The City stipulated that on May 12, 1962, it received notice that Andronaco had died, but now challenges the sufficiency of that notice because of the widow's failure to specify the

facts and circumstances of the accidental injury so that the employer could anticipate a claim for compensation. It is conceded that the telephone call to the employer the day following Andronaco's death was the only notice given to the City.

However, we approved an identical form of notice in *Chicago Rawhide Manufacturing Co. v. Industrial Com., 291 Ill. 616, 621.* More recently, the problems inherent in a notice of this kind were considered and the notice approved in *Republic Steel Corp. v. Industrial Com., 26 Ill.2d 32,* and at page 41, we stated: "In the instant case, there is nothing in the record to indicate the employer was in any way prejudiced by the employee's failure to advise employer of the accident, even if we assume the employee knew there was an accident. The employer knew of the heart attack and knew the type of work Fountain was engaged in the morning of March 26, 1958. The record indicates no attempt by Fountain to conceal anything, and no attempt by Republic to get any additional information either from Fountain or his doctors within 45 days of March 26, 1958. We therefore hold the weight of the evidence sustains the finding of the Commission that notice was given in a manner and within the time contemplated by the statute."

We hold that the weight of the evidence sustains the finding of the arbitrator and the Commission that notice was given in a manner and within the time contemplated by the statute.

Accordingly, the judgment of the circuit court of Cook County reversing the decision of the Industrial Commission and reinstating the award of the arbitrator is affirmed.

*Judgment affirmed.*