(No. 47748.—

SOHIO PIPE LINE COMPANY, Appellant, v. THE IN-
DUSTRIAL COMMISSION *et al.*—(Billy Ray Gowler,
Appellee.)

*Opinion filed March 29, 1976.*

Craig & Craig, of Mt. Vernon (Glenn E. Moore, of counsel), for appellant.

Hanagan & Dousman, of Mt. Vernon, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The claimant, Billy Ray Gowler, sought a workmen's compensation award on account of disability stemming from a heart attack. The arbitrator found that he sustained an accidental injury which arose out of and in the course of his employment by the respondent, Sohio Pipe Line Company, and awarded benefits for permanent total disability. On review the Industrial Commission affirmed the award of the arbitrator, and the circuit court confirmed the decision of the Commission. On this appeal the

respondent contends that the evidence does not support the finding that the heart attack suffered by the claimant was an accidental injury that arose out of and in the course of his employment, and also that the claimant failed to give the required statutory notice of the injury to the employer.

On February 19, 1971, the claimant, age 40, had been employed by the respondent for 18 years as a pipeliner. His health had been good. His duties included repairing leaks, laying pipe, and maintenance. On February 19, he and four other pipeliners loaded between 10 and 15 sections of 3-inch pipe and necessary connectors onto trucks at Sohio's yard at Grayville and drove 25 to 30 miles to the place where they planned to lay the pipe. They got there considerably before lunch time, but it was raining pretty hard so they ate their lunch, thinking the rain might stop. After eating they carried the pipe by hand one eighth of a mile from a gravel road to the place where the pipe was to be laid. Two men carried each section of pipe, which weighed between 180 and 250 pounds, depending on its length. Hand carrying was required because the ground was too rough to drive on. The crew laid the pipe down and used shovels to dig pipe trenches, the depth of which varied from a few inches to two feet depending on the slope of the terrain. By the time the pipe had been laid and connected it was almost quitting time. The claimant testified, without contradiction, that he "got to feeling bad" and went back to the truck before the other members of the crew. He did not help the others carry tools or lengths of pipe back to the trucks. After the workers returned to Grayville, the claimant drove to his home in Fairfield.

On the following day, a Saturday on which he was not working, he awoke at 8 a.m. and was "feeling pretty good." He drove to a restaurant in Fairfield, where, as was his custom, he met and breakfasted with Paul Artman, one of the men he had worked with the day before. The two

men decided to drive to a farm they owned about 10 or 11 miles away to check whether the rain had flooded a boat they stored there on a trailer. The claimant began to feel severe pain in his chest when they were a couple of miles from the farm, but they continued on to the farm. He remained in the truck while Artman worked on the boat. After a few minutes he called to Artman to take him to a hospital in Fairfield because the pain was "like a knife cutting in the chest." He was immediately admitted to the hospital "with complaints of severe precardial and substernal pain of crushing nature with radiation in both arms, shortness of breath, diaporesis." The diagnosis was "acute myocardial infarction." Dr. Konarski attended him then and subsequently.

What Sohio was told while the claimant was hospitalized is not clear, but Sohio mailed him a doctor's report form dated February 22, 1971. This form was sent pursuant to a Sohio sick pay plan for absence due to occupational or nonoccupational illness or injury. The particular form sent to the claimant was entitled "Doctor's Report Non-Occupational Sickness & Accident Disability." He and Dr. Konarski prepared, signed and returned the form to Sohio within 45 days of the heart attack. In answer to the question "If disability was due to an accident, where? when?" the word "No" was typed. Over the next eight months, five more of these forms were sent to the claimant and submitted to Sohio by him and Dr. Konarski. All but one of these answered the same question "No"; on one form this question was not answered.

Sohio contends that the award should be set aside for failure of the employee to comply with the notice provision of section 6(c) of the Workmen's Compensation Act. That section provides, in pertinent part:

"(c) No proceedings for compensation under this Act shall be maintained unless notice of the accident has been given to the employer as soon as practicable, but not later than 45 days after the accident. Provided:

\* \* \*

(3) *** No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy.

Notice of the accident shall give the approximate date and place of the accident, if known, and may be given orally or in writing." Ill. Rev. Stat. 1973, ch. 48, par. 138.6.

It is clear that the respondent was advised at once of the claimant's disability and hospitalization. It contends, however, that it was not informed of any facts that would lead it to believe that the claimant had suffered an accidental injury for which compensation might be claimed. In this respect the case rather closely resembles *Andronaco v. Industrial Com.* (1972), 50 Ill.2d 251. There the wife of a city of Chicago garbage truck crewman told his superior by telephone that her husband had been "sick" when he returned from work the day before and that he had died of a heart attack during the night. She gave no indication that the heart attack might have arisen out of the employee's strenuous, but routine, work the previous day. In the absence of any showing by the employer of undue prejudice, the Commission's award was upheld.

Sohio also claims that in the present case it was affirmatively misled by the statement of the claimant and his doctor that no "accident" had occurred and that the disability was nonoccupational. But neither the claimant nor his doctor could be expected to know that the word "accident," as used in the Workmen's Compensation Act, has a unique meaning which includes a heart attack that is due to routine stress on the job. The meaning of the legend that appears on the doctor's report form above the line for the employee's signature—"Authorization . To Release Above Information Is Hereby Granted And Statement That Disability Is Non-Occupational In Origin Is Stipulated"—is too opaque to form the basis for an estoppel.

Sohio also contends that there is no evidence to support the findings of the arbitrator and Commission that the heart attack was an accidental injury arising out of and in the course of employment. But when the facts are susceptible of more than one interpretation, the inference drawn by the Commission will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*Mastercraft Co. v. Industrial Com.* (1974), 58 Ill.2d 155; *Village of Streamwood Police Department v. Industrial Com.* (1974), 57 Ill.2d 345.) From the employee's uncontradicted testimony that he "got to feeling bad"—"weak"—on Friday afternoon as the crew completed laying the pipe and went back to the truck ahead of the other crew members, it could reasonably be inferred that the heart attack which reached its peak the following morning began at that time. There was no intervening physical stress. As indicated by the *Andronaco* case, the fact that the ultimate manifestation of the injury does not occur while the employee is actually engaged in the performance of his duties does not preclude a finding that the impairment began while he was at work.

While the judgment is affirmed, it appears that the award incorrectly includes compensation for a period when the claimant was working and being paid. He returned to work as a pipeliner on November 1, 1971. For a while he had no trouble, but, after feeling dizziness, chest pain and other symptoms following strenuous work one day, he was put on "light work" on a company doctor's recommendation. He worked until September 30, 1972, at which point he took a paid vacation for the month of October. When he reported for work in November of 1972 he was discharged because there was no more light work for him. He has not worked since. A portion of the award specifies that he is now entitled to $10,899.90, "being the amount of compensation that has accrued from February 19, 1971, to June 15, 1974." This figure was arrived at by multiplying the number of weeks

between those two dates, 173, by $63. The award improperly included compensation for the time the claimant was being paid—from November 1, 1971, through October 31, 1972. The award is also defective in that it fails to give Sohio proper credit for a part of the Sick Pay Plan payments, pursuant to section 8(j)(2) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(j)(2)).

The case is remanded to the Industrial Commission for correction of the errors in the award, but the judgment is otherwise affirmed.

*Affirmed in part; remanded*
*with directions.*