LOREN D. SIMBURGER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Consolidation Coal Company, Appellee).

Fifth District (Industrial Commission Division)  No. 5—85—0106WC

Opinion filed January 2, 1986.—Rehearing denied February 24, 1986.

Peter C. Drummond, of Staunton, for appellant.

Robert Hendershot, of Evans & Dixon, of St. Louis, Missouri, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Claimant Loren D. Simburger filed an application for adjustment of claim against respondent Consolidation Coal Company. An arbitrator concluded that claimant had failed to prove that he had sustained an accidental injury. On review the Industrial Commission affirmed the decision of the arbitrator, and on further review the circuit court of Montgomery County confirmed the Commission. Claimant has appealed that order. We reverse and remand to the Commission.

Claimant's problem involved his lower back. The evidence at arbitration showed that he became employed by respondent in September 1979. He was given a preemployment physical, at which time X rays were taken of his back. Dr. Rademacher, a radiologist, submitted a report showing a normal lumbosacral spine with no abnormalities. Claimant testified that he had experienced no back problems prior to going to work for respondent.

His job was that of a supply man and scoop operator. These duties included shoveling coal and concrete, loading bags of rock dust weighing 40 to 50 pounds, loading blocks, and carrying various items weighing 25 to 50 pounds.

On October 6, 1981, shortly after arriving at work, he began to experience lower back pain. He so informed his supervisor, Andy Pit-

ner, but Pitner insisted that he load certain supplies. He continued to complain about back pain and was then given a ride out of the mine. That evening the pain became very intense.

The next day, October 7, 1981, he consulted with Dr. Frank Warner. Further X rays were taken, and Dr. Warner diagnosed the condition as that of unilateral spondylolysis at L5 on the left. After learning about the nature of claimant's work duties, Dr. Warner advised him not to return to work. He also opined that the condition resulted as a cumulative matter over a period of time beginning in October 1979. He referred claimant to Dr. William Schroeder, an orthopedic surgeon. Dr. Schroeder submitted a report to respondent stating that claimant suffered from an "illness" of spondylolysis.

Following the examination by Dr. Warner, claimant returned to respondent and requested light duty. He was informed that light duty was against company policy. He also attempted to complete an accident report but was refused by a secretary. Pitner testified that claimant did not report an accident to him; only that his back was in pain. Respondent's personnel director testified that he never received an accident report and because Dr. Schroeder's report mentioned an illness rather than an accident, claimant was denied temporary total disability. He did receive 13 weeks of sickness benefits rather than 52 weeks of accident benefits.

In June 1982 claimant was examined by Dr. Marshall Conrad. The history given at that time revealed that claimant's pain developed in October 1981 while claimant was bending over at work. His diagnosis was the same as the other doctors, that of unilateral spondylolysis. He noted that while Dr. Rademacher's report made no mention of this condition, he would "give odds" that it existed prior to employment. Dr. Conrad submitted a supplemental report which stated that he had examined Dr. Rademacher's X rays and concluded that those X rays showed the spondylolysis. In answer to a hypothetical question, Dr. Conrad stated that claimant's employment made his condition become symptomatic but that the employment did not worsen the condition since the pain and symptoms would have surfaced eventually. He agreed that claimant should find work less physically demanding than coal mining and recommended that he not lift heavy objects. He stated that he would have made the same recommendation had he examined claimant at the preemployment physical.

Claimant testified that prior to working for respondent he had been a typewriter technician. Since leaving respondent, he had been attending Southern Illinois University and St. John's School of Histology. He had also worked in the laboratory at St. John's. His other acti-

vities have been limited.

The arbitrator found that claimant was subject to the Workers' Compensation Act and that an employment relationship existed; also, that necessary medical and other services had been provided by respondent and that $2,144.05 had been paid by respondent's carrier on account of the injury. However, he also found that claimant had failed to prove that his injury arose out of and in the course of his employment and therefore denied compensation.

Some further evidence was taken on review before the Commission consisting principally of claimant's testimony about his educational expenses. The Commission affirmed the arbitrator. Claimant requested that the Commission set forth reasons for its decision. However, the Commission filed only a short order stating that the arbitrator had seen and heard the witnesses and had made findings supported by the evidence; that no new evidence relating to the accident had been presented on review; and that no reason existed to change the determination of the arbitrator. As had been indicated, the circuit court of Montgomery County confirmed that order.

Claimant presents two issues for our consideration: (1) whether the failure of the arbitrator to make specific findings of fact and conclusions of law renders affirmance by the Commission impossible; and (2) whether the finding that claimant failed to prove an injury in the course of employment is against the manifest weight of the evidence.

Section 19(b) of the Workers' Compensation Act, in relevant part, provides:

> "The decision of the Arbitrator or committee of arbitration shall be filed with the Commission which Commission shall immediately send to each party or his attorney a copy of such decision, together with a notification of the time when it was filed. *Beginning January 1, 1981, all decisions of the Arbitrator or committee of arbitration shall set forth in writing findings of fact and conclusions of law separately stated."* (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(b).)

There appear to be no decisions interpreting the emphasized portion of the statute. Before reaching the parties' arguments concerning the effect of an arbitrator's failure to set forth findings of fact and conclusions of law, it is necessary to determine whether the arbitrator did so in the instant case.

In the instant case the arbitrator set forth in writing findings of fact and conclusions of law sufficient to satisfy the statute. With respect to the facts, the arbitrator made findings as to whether respondent was subject to the Workers' Compensation Act, whether an

employment relationship existed between the parties, whether the 24-year-old claimant was married or had children, the amount of claimant's previous year's earnings and weekly wages, whether medical and other services were provided to claimant by respondent, and the amount paid on account of the injury by respondent's insurance carrier. Although bare, the written findings of fact of the arbitrator are sufficient to satisfy the statute. With respect to applicable law, the arbitrator concluded that claimant failed to prove an accidental injury arising out of and in the course of his employment. It is important to note that according to the stipulation sheets, there were only three disputed issues in the case: (1) whether claimant suffered an accidental injury; (2) whether claimant's condition was causally connected to that injury, and (3) whether claimant was temporarily or permanently disabled. When the arbitrator found that claimant failed to prove an accidental injury, resolution of the other disputed issues became unnecessary. Therefore, the written conclusion of law of the arbitrator is sufficient to satisfy the statute.

■ Even if the arbitrator failed to set forth specific findings of fact and conclusions of law, that failure would not necessarily require reversal and remandment. Claimant argues that the Commission erroneously adopted and relied upon the arbitrator's findings of fact and conclusions of law where the arbitrator failed to set forth his findings and conclusions with specificity. Respondent cites *Great Plains Gas Co. v. Industrial Com.* (1984), 101 Ill. 2d 122, 461 N.E.2d 403, for the proposition that the failure to fully delineate findings of fact and conclusion of law does not necessitate setting aside a decision below. In *Great Plains*, the Industrial Commission set forth written findings of fact but no conclusions of law other than adoption of the arbitrator's finding that petitioner's injuries were compensable under section 8(d)(2) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)). Respondent argued that the Commission's failure to delineate conclusions of law violated section 19(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(e)) providing that upon "request of either party or on its own motion, the Commission shall set forth in writing the reasons for [its] decision, including findings of fact and conclusions of law separately stated." Petitioner argued that the Commission may have decided that there were no conclusions of law other than those implicitly made by the Commission's decision that petitioner's injuries were compensable. The supreme court simply stated, "On this record, the failure of the Commission to state a separate conclusion of law on this point does not require that its decision be set aside." (*Great Plains Gas Co. v. Industrial Com.*

(1984), 101 Ill. 2d 122, 128, 461 N.E.2d 403, 406.) Therefore, *Great Plains* lends support to the proposition that the failure of the arbitrator to delineate specific findings of fact and conclusions of law does not necessarily require that the Industrial Commission's affirmance of the arbitrator's decision be set aside.

As to the question of accident: all of the medical evidence came to one conclusion, that is, that the claimant suffered from unilateral spondylolysis. The evidence conflicted as to its origin. Dr. Rademacher found no evidence of it on the preemployment physical. Dr. Conrad, respondent's examining physician, "gave odds" that it existed prior to employment and followed this up with the affirmative statement that it did, and Dr. Schroeder denominated it as an "illness." The conflict and the designation appear to have misled both the arbitrator and the Commission.

It is not significant that the condition may have been preexisting nor that it was called an illness. The stark fact remains that the events of October 5, 1981, precipitated a breakdown in the physical structure.

■ The controlling authority is *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 305 N.E.2d 529. In that case the supreme court determined that aggravation of an existing disease is compensable if it is traceable to a specific time, place and cause. Other similar and diverse authorities on the same question are collected in the recent opinion of this court in *Peoria County Belwood Nursing Home v. Industrial Com.* (1985), 138 Ill. App. 3d 880.

The record does not indicate that claimant had experienced any back problems prior to being employed by respondent. The record does indicate a breakdown on October 6, 1981. The following was elicited on cross-examination of claimant by respondent's counsel:

"Q. In other words, you weren't going a particular task when you suddenly noticed your back went out or it started to hurt a lot?

A. I was a scoop operator, and I was carrying bolting supplies into the section, and my back started hurting.
* * *
Q. What were you doing when you first noticed the pain?

A. Uh—loading supplies into a scoop tractor from the tram."

Further evidence came from claimant's supervisor, Pitner, upon examination by respondent's counsel as follows. Pitner was asked what claimant told him at the time and replied:

"A. Uh—first, I'd say a couple of times he told me his back was bothering me [him], and the third time he told me it was bossing him pretty bad. I said, 'What's wrong?' He said, 'I don't

know, it's hurting low. I think I got kidney problems.' I said, 'I'll get you a ride out,' and I said, 'go to the hospital or a doctor right away because it's nothing to mess with.' "

It is thus apparent that claimant was able to fix a definite time, place and circumstance of the injury. The case is unlike *Peoria Belwood*, where the claimant was unable to do so and in fact continued to work for approximately 10 months following the incident which she maintained caused the injury.

■ While not controlling, it is significant that claimant attempted to report an accident but was forfended by the action of respondent, apparently relying on Dr. Schroeder's report of an illness. Even assuming that Dr. Schroeder's diagnosis is correct, it does not follow that compensation must be denied. In *General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 434, 433 N.E.2d 671, the supreme court said:

"[E]mployers take their employees as they find them [citation]. When workers' physical structures, diseased or not, give way under the stress of their usual tasks, the law views it as an accident arising out of and in the course of employment."

We therefore conclude that the arbitrator's finding, as affirmed by the Commission and confirmed by the circuit court, that the claimant failed to prove that he sustained an accidental injury arising out and in the course of his employment is against the manifest weight of the evidence.

■ Two related matters require brief comment. Claimant has maintained that he is permanently disabled. All of the medical evidence is to the contrary and that claim is without merit. A worker is permanently disabled only when he is unable to make some contribution to industry sufficient to justify the payment of wages. (*Arcole Midwest Corp. v. Industrial Com.* (1980), 81 Ill. 2d 11, 405 N.E.2d 755.) The record here is plain that claimant not only can work but has in fact gone to work.

The order of the Commission is therefore reversed and the cause is remanded to the Commission to consider temporary total disability compensation from October 6, 1981, to the date upon which claimant returned to work, together with any medical expenses not already compensated.

Reversed and remanded with directions.

McNAMARA, LINDBERG, BARRY, and KASSERMAN, JJ., concur.