JOHN LUCKENBILL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Caterpillar Inc., Appellee).

Fourth District (Industrial Commission Division) No. 4—86—0187WC

Opinion filed February 26, 1987.—Rehearing denied June 9, 1987.

· McCULLOUGH and McNAMARA, JJ., dissenting.

Allen F. Bennett & Associates, P.C., of Decatur, for appellant.

Forrest D. Serblin, of Peoria, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

On May 30, 1980, claimant, John Luckenbill, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) (Act) for a back injury which allegedly arose out of and in the course of his employment with respondent, Caterpillar Inc. After a hearing on March 18, 1981, an arbitrator decided that claimant sustained injuries arising out of and in the course of his employment with respondent but that there was no evidence that claimant gave timely notice of an accidental injury to respondent. The arbitrator therefore denied the claimant's claim. A further hearing was held before the Industrial Commission on April 27, 1982. On September 14, 1984, without setting out specific findings, the Industrial Commission determined that claimant failed to prove that he sustained in-

juries arising out of and in the course of his employment and further that he failed to prove that he gave timely notice of the alleged accident. The circuit court confirmed the decision of the Industrial Commission. The claimant has perfected this appeal. We reverse and remand.

On appeal, claimant urges that the decision of the Industrial Commission is contrary to law and against the manifest weight of the evidence. Claimant also contends, in the alternative, that this cause should be remanded to the Industrial Commission because the Industrial Commission's decision fails to comply with the requirements of section 19(e) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(e)).

At the hearing before the arbitrator, claimant testified that he worked in respondent's material control department, lifting painted parts out of a basket and placing them into tubs. The weight of the parts varied from one to hundreds of pounds, although heavier or bulky parts were lifted by use of a hoist.

Claimant testified that on February 26, 1980, he was working the second shift, 3:18 p.m. to 11:18 p.m. and that at approximately 9:30 p.m., he had been bent over for 10 or 15 minutes lifting parts out of the basket. According to claimant, when he straightened up he felt like he pulled a muscle in his back. He felt a "sharp pull" or a "catch," and after that a dull pain in his lower back. Claimant testified that he told his foreman, Greg Tumiati, and a fellow worker, Terrence Taylor, that he felt as if he had pulled a muscle in his back. However, claimant did not seek first aid.

Claimant testified that he finished the shift at a dumpster where the parts could be unloaded automatically. He stated that he told Tumiati he was going to do that. He finished the shift, went straight home, showered and went to bed. The next morning, he was stiff and in pain, so much so that he could not bend over or move to his side. He stated that his legs also hurt. Claimant went to his father's house and asked his father to make an appointment with the doctor. Claimant testified that Dr. Schrodt could not see him that day, the 27th, but that on the 28th he met the doctor at the emergency room at St. Mary's Hospital in Decatur.

Claimant was admitted to the hospital on February 28, 1980, and had four separate hospital stays: February 28 to March 8; April 7 to April 11; April 13 to April 14; and April 21 to May 3. The medical records from his first stay indicate claimant's complaint to be: "[T]he gradual onset of low back pain while he was working. He did not have a specific injury episode"; and "had a gradual onset of back pain. No traumatic [injury] noted." Dr. Schrodt's diagnosis was "probable herni-

ated disc." The treatment was physical therapy and pelvic traction. Claimant was released March 8 with a guarded prognosis.

On February 28 and 29, 1980, claimant signed two forms on which he answered "No" to the questions: "Was an accident or injury involved?" and "Was an accidental injury involved?"

On April 7, 1980, without having returned to work, claimant was readmitted to the hospital, complaining of pain again in his legs. The nursing admission history notes: "Lifting [at] work—continued to work that day." A myelography confirmed a herniated disc and spinal stenosis. Claimant was discharged on April 11, and was scheduled to be readmitted for surgery.

On April 13, 1980, claimant was readmitted, but surgery could not be scheduled. The nursing admission history for April 13 notes: "Lifting [at] work 2/26/80 ***." On April 21, 1980, claimant was readmitted and laminectomies were performed on April 22, 1980. Dr. Schrodt found "obvious marked stenosis of the canal" and "a small disc protrusion." Claimant was released on May 3, 1980, and the discharge order notes a final diagnosis of "spinal stenosis." Claimant returned to work for respondent in October 1981.

Terrence Taylor and Greg Tumiati also testified before the arbitrator. Taylor testified that shortly after a break on February 26 claimant told him that he had hurt his back. When Taylor suggested that claimant seek first aid, claimant responded, "Well, I told Tumiati."

Tumiati testified that he did not recall whether claimant told him on that day about having hurt his back but that claimant could have told him. Tumiati stated that he did recall a conversation with claimant sometime in February 1980, during which claimant asked for a leave of absence, a Thursday and Friday, or a Friday and Monday, to go to Florida or Texas to help his brother move. Claimant testified that he had requested time off two to three weeks prior to the incident and that he planned to fly to Florida on Thursday, February 28. Claimant testified that he never made it to Florida because of the injury to his back.

The arbitrator found that claimant sustained accidental injuries arising out of and in the course of his employment by respondent but denied the claim for compensation based on the finding that there was no evidence that claimant gave timely notice to respondent.

At the hearing before the Industrial Commission, Lawrence Luckenbill, claimant's father, testified that he called Dr. Schrodt for his son on February 27 and that he also called respondent to report his son's impending absence from work that day. He testified that he told both Dr. Schrodt's office and respondent that claimant had hurt his back at work. He testified that he called Dr. Schrodt at about 10 a.m. and that

he called respondent later that day.

Bill Richardson, respondent's employee benefits supervisor, testified before the Industrial Commission as to the call-in procedures for employee absences. When notification of an absence is called in, an absence report is prepared; and if the report indicates that the employee is under a doctor's care or indicates that an accident has occurred, the report is routed through Richardson's department. Richardson identified one of respondent's exhibits as an absence report prepared on February 27, 1980. The report notes that at 2:44 p.m. on the 27th, claimant himself called respondent to report that he would not be in to work. The report states as the reason for absence: "Down in back. Waiting for Dr. Schrodt to call him back." The report notes claimant's identification number, department, and foreman, *i.e.*, Tumiati. Richardson testified that the employee taking the call-in was not to speculate but was to simply report what the employee said, especially at that time of day because of the volume of the calls. He testified that a copy of the report would have been forwarded to Tumiati the same day or the next day. It was Richardson's opinion that "we were informed of the Petitioner's [claimant's] condition and the reason for the condition on the next day."

Respondent's exhibits also included an absence notice for February 28, 1980, which stated only that claimant was in the hospital.

The Industrial Commission determined, without specific findings, that claimant failed to prove that he sustained accidental injuries arising out of and in the course of his employment and further that claimant failed to prove that he gave timely notice of the alleged incident.

■ In order to demonstrate an accidental injury, a claimant must trace the injury either to a specific accident identifiable as to time and place or to the specific moment of collapse of one's physical structure, identifiable as to time and place. However, "an employee may be 'accidentally injured' under the Act as the result of repetitive, work-related trauma even absent a final, identifiable episode of collapse." *Peoria County Belwood Nursing Home v. Industrial Com.* (1985), 138 Ill. App. 3d 880, 883, 885, 487 N.E.2d 356, 359, 360, *aff'd* (1987), 115 Ill. 2d 524.

■ In the case at bar, claimant met his burden of proving an accidental injury, and the Industrial Commission's decision to the contrary was against the manifest weight of the evidence. Claimant testified that he injured his back after lifting parts out of a basket. Claimant was diagnosed as having a herniated disc, and the diagnosis was confirmed in surgery. Claimant's testimony that he suffered a back injury during the work shift of February 26, 1980, is consistent with the medi-

cal records, claimant's father's testimony, Taylor's testimony that he heard petitioner complain of such an injury during that shift, and respondent's own absence notices.

▪ Respondent argues that Taylor's testimony is inadmissible hearsay. We do not agree with claimant's contention that this issue has been waived. Respondent did object to this testimony at the arbitration hearing and did argue this point in the circuit court. (*Cf. Caradco Window & Door v. Industrial Com.* (1981), 86 Ill. 2d 92, 97, 427 N.E.2d 81, 82.) Taylor's testimony would be inadmissible hearsay if offered to prove the truth of the matter asserted. "The rule concerning the competency of statements by the person injured is that unless such statements are a part of the *res gestae* they are not competent to prove injury or the cause thereof, as they are self-serving declarations." (*Sidney Wanzer & Sons, Inc. v. Industrial Com.* (1942), 380 Ill. 409, 411, 44 N.E.2d 40, 42.) In the case at bar, claimant's statements to Taylor were made after the alleged incident and were not part of the *res gestae.* (*Cf. Rockford Clutch Division, Borg-Warner Corp. v. Industrial Com.* (1967), 37 Ill. 2d 62, 224 N.E.2d 830 ("I just pulled hell out of my back").) However, the testimony was admissible in this instance because it tends to prove that claimant did not fabricate his claim or incur his injury at any time after the work shift of February 26, 1980. See *Lyon v. Oliver* (1925), 316 Ill. 292, 303, 147 N.E. 251, 255; E. Cleary & M. Graham, Illinois Evidence sec. 611.14, at 398 (4th ed. 1984).

▪ We conclude that the Industrial Commission improperly rejected Taylor's testimony in reaching the conclusion that claimant did not prove that he suffered an accidental injury arising out of and in the course of his employment. Taylor's testimony was neither contradicted nor impeached. We also note that Taylor testified before the arbitrator but not before the Industrial Commission, and therefore the arbitrator was in a better position to evaluate his testimony. See *Lewandowski v. Industrial Com.* (1969), 44 Ill. 2d 204, 206, 254 N.E.2d 520, 521.

▪ The issue of whether an injury arose out of and in the course of employment is usually one of fact for the Industrial Commission, and its finding ordinarily will not be disturbed on judicial review. However, a reviewing court must nevertheless weigh and consider the evidence, and if the Industrial Commission's decision is against the manifest weight of the evidence, the court has a duty to set the decision aside. *Oros v. Industrial Com.* (1967), 37 Ill. 2d 568, 571, 229 N.E.2d 481, 483.

We recognize that it is the function of the Industrial Commission to judge the credibility of witnesses, determine the weight of the evi-

dence, and draw reasonable inferences therefrom. Nevertheless, in the instant case there is no indication of how the Industrial Commission came to the conclusion that there was no accidental injury within the meaning of the Act. The medical records, claimant's testimony, claimant's father's testimony and Taylor's testimony all indicate that claimant injured his back while working on February 26, 1980. In the absence of any evidence to the contrary, it was not reasonable for the Industrial Commission to conclude that claimant's injury arose other than out of and in the course of his employment.

Respondent argues that claimant's testimony is contradicted both by: (1) the medical records, indicating that claimant's complaint upon his initial admission to the hospital was that he suffered a gradual onset of pain as opposed to a specific or traumatic injury, and (2) by forms signed by claimant on February 28 and 29, 1980, in which claimant indicated that he had not suffered an accidental injury. However, claimant explained that he initially told the doctor he had not done anything to his back "because I didn't want to be removed from the job I was on, if it was just muscle spasms there was no need to." Claimant testified that the doctor said that he did not believe him. When claimant was informed that surgery was required, he told the doctor of the incident at work. According to petitioner the doctor said, "That explains why." Furthermore, the medical records also indicate that claimant stated at all times that he had injured his back at work on February 26, 1980, and there is no dispute that claimant was suffering from a herniated disc at the time of his initial admission to the hospital. With respect to the forms on which claimant answered that he had not suffered an accidental injury, the claimant should not be expected to know that the word "accident" had a unique meaning in the Workers' Compensation Act. *Sohio Pipe Line Co. v. Industrial Com.* (1976), 63 Ill. 2d 147, 151, 345 N.E.2d 468, 470.

While the inconsistency between claimant's initial statements to medical personnel concerning the onset of his injury and his subsequent statements and testimony reflect adversely on his credibility generally, it does not support a finding that claimant did not suffer a compensable accidental injury. Whether claimant suffered the gradual onset of pain or a specific, traumatic injury, the evidence presented to the arbitrator and the Industrial Commission proved that claimant injured his back while working for respondent on February 26, 1980. (See *Peoria County Belwood Nursing Home v. Industrial Com.* (1985), 138 Ill. App. 3d 880, 883, 885, 487 N.E.2d 356, 359, 360, *aff'd* (1987), 115 Ill. 2d 524.) Although the Industrial Commission might have rejected claimant's testimony, there appears no reason

in the record to reject the other evidence supporting petitioner's claim. In the case at bar there does not appear to be a reasonable alternative explanation for petitioner's injuries. See *Butler Manufacturing Co. v. Industrial Com.* (1986), 140 Ill. App. 3d 729, 734-36, 489 N.E.2d 374, 379-80.

■ Respondent urges that the laminectomies were performed to correct claimant's condition of spinal stenosis. Respondent suggests that the spinal stenosis was the cause of claimant's back pain. The medical records, however, indicate that the laminectomies were performed to correct the herniated disc and that claimant still suffered from spinal stenosis when discharged. In any event, a pre-existing disease does not require that compensation be denied. (*Simburger v. Industrial Com.* (1986), 140 Ill. App. 3d 371, 377, 488 N.E.2d 1027, 1031.) "[E]mployers take their employees as they find them [citation]. When workers' physical structures, diseased or not, give way under the stress of their usual tasks, the law views it as an accident arising out of and in the course of employment." *General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 434, 433 N.E.2d 671, 672.

In light of the foregoing, we conclude that the decision of the Industrial Commission that claimant failed to prove that he sustained accidental injuries arising out of and in the course of his employment was against the manifest weight of the evidence.

On the issue of notice, section 6(c) of the Act provides:

"Notice of the accident shall be given to the employer as soon as practicable, but not later than 45 days after the accident. Provided:

\* \* \*

No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy.

Notice of the accident shall give the approximate date and place of the accident, if known, and may be given orally or in writing." Ill. Rev. Stat. 1979, ch. 48, par. 138.6(c).

■ The supreme court has held that the giving of the notice within 45 days of the accident is jurisdictional and a prerequisite of the right to maintain a proceeding under the Act. (*Ristow v. Industrial Com.* (1968), 39 Ill. 2d 410, 413, 235 N.E.2d 617, 618.) However, this rule applies where no notice is given to the employer. (39 Ill. 2d 410, 413-14, 235 N.E.2d 617, 619; *Lambert v. Industrial Com.* (1980), 79 Ill. 2d 243, 247, 402 N.E.2d 617, 620.) Where some notice is given but a defect or inaccuracy exists, the second paragraph quoted above is applicable, and

the employer must prove he is unduly prejudiced. Ill. Rev. Stat. 1979, ch. 48, par. 138.6(c); *McLean Trucking Co. v. Industrial Com.* (1978), 72 Ill. 2d 350, 354-55, 381 N.E.2d 245, 247 (notification of death but not cause of death); *Thrall Car Manufacturing Co. v. Industrial Com.* (1976), 64 Ill. 2d 459, 465-67, 356 N.E.2d 516, 519-20 (employee told company nurse, "I got trouble in my knee" and "I would like to go and see the doctor").

In the instant case, claimant testified that he notified his foreman immediately of his back injury. Claimant's father testified that he called respondent the morning after the incident and told the person on the phone that claimant would not be in to work and that claimant had been hurt at work. In addition, and in any event, respondent's exhibits indicate that claimant's absences from work were reported on February 27 and 28, and the absence report for February 27 states that claimant was "Down in back. Waiting for Dr. Schrodt to call him back." The report for February 28 states that claimant was in the hospital. Finally, Bill Richardson, respondent's employee benefits supervisor, testified that claimant's foreman received the absence notice of February 27, 1980, or a copy thereof, within a couple of days. Richardson testified further: "In my opinion, we were informed of the Petitioner's [claimant's] condition and the reason for the condition on the next day."

In *Sohio Pipe Line Co. v. Industrial Com.* (1976), 63 Ill. 2d 147, 151, 345 N.E.2d 468, 470, as here, the employer was notified at once of the claimant's disability and hospitalization but was not informed of any facts that would lead it to believe that the claimant suffered an accidental injury for which compensation might be claimed. Also, as here, the claimant stated on a form that no "accident" had occurred. Nevertheless, the court held that the claim was not barred, rejecting the employer's claim that it was affirmatively misled.

■ Respondent was immediately notified of claimant's back complaints, and even if the testimony of claimant, his father, and respondent's employee that respondent was notified of the potentially compensable nature of the injury is disregarded, respondent has failed to allege or prove any prejudice. Therefore, lack of notice is not a bar to claimant's claim. See *Andronaco v. Industrial Com.* (1972), 50 Ill. 2d 251, 256-57, 278 N.E.2d 802, 805-06.

In light of our disposition of these issues, it is unnecessary to consider claimant's final contention.

Consistent with the foregoing, the decisions of the Industrial Commission and the circuit court are reversed and this cause is remanded for a determination of the compensation to be awarded to claimant.

Reversed and remanded.

BARRY, P.J., and WOODWARD, J., concur.

JUSTICE McCULLOUGH, dissenting:

The decision of the Industrial Commission is not against the manifest weight of the evidence.

It is the function of the Industrial Commission to judge the credibility of the witnesses. (*Watts v. Industrial Com.* (1979), 77 Ill. 2d 30, 394 N.E.2d 1171.) As stated in *Branch v. Industrial Com.* (1983), 95 Ill. 2d 268, 272, 447 N.E.2d 828, 829, "There is sufficient evidence to support the decision of the Industrial Commission that the petitioner failed to prove he sustained an accidental injury arising out of and in the course of his employment and, therefore, the Commission's decision was not against the manifest weight of the evidence."

In the instant case, the credibility of the witnesses was an important factor in determination of the merits of the claim. The employee indicated that he told Dr. Schrodt that he had not done anything to hurt himself; he filed claims with respect to insurance and in answer to a question as to whether it was an accidental injury, he stated "No." In fact, he indicated on two different occasions that there was no known injury. The Industrial Commission had the prerogative to believe the witnesses. The father's testimony that he had informed the company of the alleged accident is not verified by the records of the company or of Dr. Schrodt which clearly indicate to the contrary. The business records of the personnel department of the company do not show a report of an accident. The fact finder is in a prime position to determine the credibility of the witnesses. The Industrial Commission's decision should not be reversed if there is evidence supporting its decision and its decision is not against the manifest weight of the evidence. *Branch v. Industrial Com.* (1983), 95 Ill. 2d 268, 447 N.E.2d 828.

The majority cites *Sohio Pipe Line Co. v. Industrial Com.* (1976), 63 Ill. 2d 147, 345 N.E.2d 468. It should be noted that in *Sohio* the supreme court did not reverse the decision of the Industrial Commission but in fact affirmed the Industrial Commission. The *Sohio* court stated at page 152 that "when the facts are susceptible of more than one interpretation, the inference drawn by the Commission will not be disturbed on review unless it is contrary to the manifest weight of the evidence."

The decision of the Industrial Commission should be affirmed.

McNAMARA, J., joins in this dissent.