ROBERT G. PRYOR, Petitioner-Appellee, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Rockwell International, Appellant).

Fifth District (Industrial Commission Division)   No. 5—89—0005WC

Opinion filed August 8, 1990.

BARRY, P.J., and WOODWARD, J., dissenting.

John B. Adams and Jeffrey B. Huebsch, both of Kubiesa & Power, Ltd., of Westmont, for appellant.

James H. Cooksey, of Crain, Cooksey & Veltman, Ltd., of Centralia, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, Bob G. Pryor, sought worker's compensation benefits following an alleged accident while working for respondent Rockwell International. An arbitrator awarded $219.74 per week for 23⁶/₇ weeks as temporary total disability benefits, plus $7,829 for medical expenses. The Industrial Commission (Commission), with one member dissenting, reversed the arbitrator's decision, finding no award should be made because claimant failed to prove he sustained accidental injuries arising out of and in the course of his employment. The circuit court of Marion County reversed, finding the

Commission's decision was against the manifest weight of the evidence.

Claimant began working for respondent in October 1983. In 1985, he was a molder, and his job required bending over to pick up six to eight pounds of material from a box, cut it, and bend over to hand the material to a trimmer every 90 seconds. In late July 1985, one of the two molder jobs, and one of the two trimmer jobs, were eliminated. Claimant, therefore, asserted that his workload doubled. He soon noticed pain shooting down his lower back and right leg.

On August 19, 1985, claimant saw Dr. Michael Murphy, a neurosurgeon. He gave no history of a work-related injury.

On September 4, 1985, claimant felt increased pain at work. He testified that he reported the problem to the plant nurse, the plant supervisor, Frank Franczyk, and several other employees. Claimant was told he would need a doctor's authorization to go on medical leave. He stopped working on that day.

On August 19 and September 12, 1985, claimant signed group insurance claim forms which stated that no accident was involved. Claimant testified that Franczyk told him it was too late to file a worker's compensation claim, and that an accident was only when, e.g., an object fell on the worker and injured him. Claimant testified, however, that he understood accidents could occur in other ways.

On September 24, 1985, claimant returned to Dr. Murphy. On October 19, 1985, back surgery was performed. On April 10, 1986, claimant returned to work for respondent. Claimant testified at the arbitration hearing that he continued to experience leg and back problems.

Claimant also testified regarding a preexisting condition. In 1976, claimant injured his back when he was pinned between two trucks. He was treated by Dr. Murphy. In 1978, both legs became numb and he could not walk. After six months of treatment, Dr. Murphy performed a laminectomy in July 1978. From that time until the time of the arbitration hearing, claimant experienced some numbness in his left leg. He had no further problems with his back until July 1985, although he worked at several laborer jobs during the intervening years.

Claimant denied any leg injuries since 1978. He agreed, however, that in January 1984 he reported to his supervisor that he had injured his knees. In 1983, claimant passed a preemployment physical with respondent.

Ann Marie Pryor, claimant's wife, testified that in late August

1985 claimant began having physical difficulty working around the house and getting up from the couch.

Frank Franczyk testified for both parties. He denied speaking with claimant on September 4, 1985, about a work injury. In October 1985, he spoke with a union representative and claimant about filing the worker's compensation claim.

Dr. Murphy testified at a January 28, 1986, evidence deposition. In 1978, claimant had a herniated disc at L4-L5 and L5-S1 levels.

On August 19, 1985, he saw claimant. A patient information sheet indicated that he had a worker's compensation claim. Objective findings were present, including some residuals from the 1978 surgery. An August 19 letter which Dr. Murphy wrote to claimant's physician made no mention of trauma at work.

On September 24, 1985, claimant told Dr. Murphy he had suffered back pain when pulling material from a box at work. Tests revealed a herniated disc at L4-L5 and L5-S1 levels. On October 18, 1985, a lumbar fusion was performed.

Dr. Murphy opined: "I don't think [the back condition] was caused by [the work activities], but I suspect it was pre-existing and was aggravated by it." He also said that the condition could "occur with as little as the activities of daily living" because the condition was "a time bomb" waiting to go off. The disc condition was degenerative in nature and could be long standing. The diagnostic findings could be there without trauma and were consistent with post-operative changes. The 1985 surgery revealed a calcified disc fragment, which could result from the prior injury.

The arbitrator found claimant had suffered an accident arising out of and in the course of his employment with respondent. The arbitrator relied on Dr. Murphy's opinion that claimant's condition was related to the work activities and that his preexisting condition was aggravated by the work duties.

The Commission reversed, finding insufficient evidence of a compensable injury. It relied on the fact that initially claimant did not report a work injury to Dr. Murphy; that the medical insurance forms did not specify a work accident; and that Dr. Murphy "suspected the work history of pulling of materials described by [claimant], aggravated the preexisting herniated disc, not caused it." A dissenting member asserted that the majority erred in relying on claimant's failure to classify his repetitive injury as an "accident."

The trial court reversed the Commission, finding its decision was against the manifest weight of the evidence. The court pointed out that from 1978 until July 1985, claimant was without symptoms

and that the new symptoms coincided with the doubling of claimant's workload. The court found that the evidence, including Dr. Murphy's opinion on causation, established that claimant had suffered a repetitive injury which aggravated a preexisting condition.

■■ Whether a work-related accident occurred and whether it caused a worker's condition of ill-being are questions of fact for the Commission. (*Oscar Mayer & Co. v. Industrial Comm'n* (1988), 176 Ill. App. 3d 607, 531 N.E.2d 174.) The Commission must weigh the evidence and draw reasonable inferences therefrom. This court may not overturn the Commission's decision merely because it might have drawn different inferences. *Niles Police Department v. Industrial Comm'n* (1981), 83 Ill. 2d 528, 416 N.E.2d 243.

■■ ■ Recovery is properly denied where the employee's health has so deteriorated that any normal daily activity is an overexertion, or where the activity engaged in presents risks no greater than those to which the general public is exposed. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1982), 92 Ill. 2d 30, 440 N.E.2d 861.) Where a preexisting condition is aggravated, the employee must show that the employment significantly contributed to the injury by placing the employee in a position increasing the dangerous effects of the physical act which revealed the condition of ill-being. See *Elliot v. Industrial Comm'n* (1987), 153 Ill. App. 3d 238, 505 N.E.2d 1062.

Once claimant's physician testified without contradiction that any normal daily activity could produce the herniated disc, this court should not step in and prohibit the Commission from relying on that expert opinion.

Claimant argues that the work duties significantly contributed to the back injury because petitioner was bending over every few minutes to lift six to eight pounds of material out of a box. The Commission was entitled to rely on Dr. Murphy's opinion that the work might have aggravated but did not *cause* the herniated disc. Dr. Murphy agreed that the condition of petitioner's back was a "time bomb" waiting to go off. Interestingly, he added that any employer was "nuts to hire him" because they would not "get their money's worth." Dr. Murphy emphatically stated that the disc would herniate without any trauma at all. It could occur with "as little as the activities of daily living," such as sneezing, or bending over to tie his shoes, or "anything." Dr. Murphy testified that he expected the disc problems to show up again after the 1978 surgery "one way or the other."

■■ Thus, the Commission could reasonably infer that petitioner

could have herniated the disc by bending over to pick up a newspaper, bending over at the grocery store to pick up food, or bending over at the gas station to check his tires. The need to bend over, even repeatedly, is not unique to petitioner's work. It is not sufficient that the pain from a condition of ill-being might have been experienced at work. The act of bending over does not establish, as a matter of law, the existence of a risk greater than those faced outside of work. See *Elliot v. Industrial Comm'n*, 153 Ill. App. 3d 238, 505 N.E.2d 1062.

■ Dr. Murphy's testimony apparently undermined claimant's contention that the change in workload triggered claimant's October condition. Significantly, Dr. Murphy believed the work duties "aggravated" the preexisting condition only because he found calcification on the disc fragment nerve root during the October 1985 surgery and assumed it had been there for some time. "It takes a while, and I can't tell you how many days for something to calcify. I assume that's over a period of time, and I think maybe six to twelve months." Dr. Murphy, of course, was apparently unaware of the timing of the change in the workload. The only detail he recited regarding the work duties and their aggravation of the back condition was a vague statement that the possibility of aggravation "seems to be consistent with the story that [claimant] told." In fact, petitioner complained of pain within weeks after the workload changed, and within two months underwent the operation which revealed the longstanding calcification. Dr. Murphy also stated that it would be "unusual" for trauma-induced herniation to result in calcification within only two months.

The Commission was also entitled to rely on the fact claimant delayed reporting to his physician a history of trauma at work for over a month, until September 24, 1985.

■ Although there is an early reference to a worker's compensation claim, the Commission could also rely on the fact that in August and September 1985, claimant completed insurance forms stating he did not claim a work-related accident. It is true that a worker need not understand the exact meaning the law imparts to the term "accident," particularly in a repetitive trauma case. However, while not fatal to the claim, the Commission, as trier of fact, was free to disbelieve claimant's explanation as to why he failed to tell his physician the pain was work related and failed to note on the insurance claim forms that a work-related injury was involved.

We hold that the Commission's decision is not against the manifest weight of the evidence.

For these reasons, the judgment of the circuit court of Marion County is reversed, and the Commission's decision, awarding no benefits to claimant, is reinstated.

Judgment reversed.

McCULLOUGH and LEWIS, JJ., concur.

PRESIDING JUSTICE BARRY and JUSTICE WOODWARD dissenting:

We respectfully dissent from the majority opinion. The majority treats this appeal as merely a determination of whether the Commission's decision. was against the manifest weight of the evidence. We cannot agree. As the dissenting Commissioner and the circuit court noted, the Commission's majority decision misapplied the law to the facts. When the law is correctly applied to the *Commission's* factual findings, which came from the nearly uncontroverted evidence, it is clear that the petitioner proved his case.

As noted by the majority, the arbitrator found that the petitioner had sustained accidental injuries arising out of and in the course of his employment. Specifically, she found that the petitioner's back problems developed at work after he was required to work alone on an Aerostar press. That job consisted of bending over every minute and 45 seconds to pull six to eight pounds of material out of a box, cutting it, then bending over a 460°F, waist-high die without touching it and handing the cut material to the trimmer on the other side of the six-foot-wide die. Based on her finding, the arbitrator ruled that the petitioner was temporarily totally disabled from September 4, 1985, through February 18, 1986, the date of the arbitration hearing.

On review before the Commission, the parties stipulated that as of April 10, 1986, the petitioner had returned to work and was engaged in his normal duties for the respondent. No further new evidence was presented.

The Commission reversed the arbitrator's decision, finding that the petitioner had failed to prove he sustained accidental injuries arising out of and in the course of his employment. The Commission expressly found that on August 19, 1985, the petitioner had not told Dr. Murphy that his back problems were work related. It further found that "Dr. Murphy suspected the work history of pulling of materials described by the Petitioner, aggravated the preexisting herniated disc, not caused it." Additionally, it specifically noted that

on the August 29 and September 12, 1985, medical insurance claim forms the petitioner filled out, he "did not claim a specific accident." Commissioner Ted Black, Jr., dissented, contending that the majority had erred in basing its decision on the petitioner's failure to categorize his injury as an accident and in ignoring the repetitive trauma law set forth in *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.

The circuit court found that the Commission's majority decision was against the manifest weight of the evidence and that the dissenting Commissioner was correct. The court noted that the petitioner's preexisting condition was undisputed, as was the evidence that the petitioner was asymptomatic until July of 1985, when the amount of pulling he was required to do on the job approximately doubled. The court found inappropriate the Commission's consideration of the medical forms in which the petitioner had failed to refer to a specific accident. Regarding the petitioner's being a time bomb, the court stated that an employer takes an employee as it finds him. It further found that the only medical evidence of causation was Dr. Murphy's opinion that the repetitive pulling of material at work had aggravated the petitioner's preexisting condition. Based on its findings, the circuit court reinstated the decision and award of the arbitrator.

The law provides that an employee may be "accidentally injured" under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) as the result of repetitive, work-related trauma even absent a final, identifiable episode of collapse. (*Peoria County Belwood Nursing Home v. Industrial Comm'n* (1985), 138 Ill. App. 3d 880, 487 N.E.2d 356, *aff'd* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.) Employers take their employees as they find them; when a worker's physical structure, diseased or not, gives way under the stress of his usual tasks, the law views it as an accident arising out of and in the course of his employment. (*General Electric Co. v. Industrial Comm'n* (1982), 89 Ill. 2d 432, 433 N.E.2d 671.) The sole exception to this rule is to deny recovery where the employee's health has so deteriorated that any normal daily activity is an overexertion, or where the activity engaged in presented risks no greater than those to which the general public is exposed. *Caterpillar Tractor Co. v. Industrial Comm'n* (1982), 92 Ill. 2d 30, 440 N.E.2d 861.

A claimant need not show that the work accident was the only causative factor, or even the principal causative factor. He need only show that the accident was a causative factor. (*Smith v. Indus-*

*trial Comm'n* (1987), 161 Ill. App. 3d 383, 512 N.E.2d 712.) Further, as found by the circuit court, a claimant is not expected to know the unique meaning of the word "accident" under the Act. *Luckenbill v. Industrial Comm'n* (1987), 155 Ill. App. 3d 106, 507 N.E.2d 1185.

We find very few discrepancies in the evidence presented in this case. It is undisputed that following the petitioner's 1978 back surgery, he worked in a number of physically demanding jobs without incident. Prior to starting work with the respondent, he passed a preemployment physical examination. He then worked for almost two years without any back pain, though he did experience some numbness in his left leg. That numbness was merely a residual of the 1978 surgery. The onset of his current back problems coincided with the cutting of two workers from the press crew, which doubled his workload.

Dr. Murphy testified that during his August 19, 1985, visit, the petitioner filled out a form stating that worker's compensation was involved. While the petitioner did not at that time tell the doctor that his work was causing his back problems, Dr. Murphy did not ask the petitioner for a cause. Instead, the doctor merely examined the petitioner and ordered a CAT scan. Further, as the dissenting Commissioner and the circuit court noted, under the circumstances of this case it was unreasonable to expect the petitioner to believe that he had suffered an "accident." When Dr. Murphy did take a history from the petitioner, the petitioner stated that he believed his work had caused his back problems.

While the majority places considerable weight on the doctor's agreement with the respondent's attorney's statement that the petitioner was a time bomb, we do not find it indicative of the doctor's testimony as a whole. Dr. Murphy plainly stated on several occasions that he believed the petitioner's work had aggravated his back condition and led to the herniated disc.

Interestingly, the Commission's factual findings were generally consistent with the overwhelming weight of the evidence. It was only when the Commission applied the law to its findings that it seriously erred in two respects. First, it erroneously relied on the petitioner's failure to call his injury an "accident." Second, it completely ignored *Peoria Belwood.* Regarding the first error, contrary to this court's majority opinion, the Commission's reliance on the petitioner's failure to recognize his injury as an "accident" directly contradicts our holding in *Luckenbill.* Regarding the second error, the Commission's reliance on the fact that Dr. Murphy suspected

that the petitioner's work had "aggravated the preexisting herniated disc, not caused it," showed its misunderstanding of the law of repetitive trauma as set forth in *Peoria Belwood.* That finding should have led the Commission to uphold the arbitrator's award.

We therefore conclude that the circuit court correctly found that the Commission's opinion was against the manifest weight of the evidence and correctly reinstated the arbitrator's decision and award.